## Commonwealth to use, Appellant, *v.* Empire State Surety Company (No. 1).

*Principal and surety—Public contractor's bond—State highways—Laborers and material men—Act of May 1, 1905, P. L. 318.*

1. The State Highways Act of May 1, 1905, P. L. 318, intends that the bond given by the contractor shall be for the protection of the state alone and limits its amount so as to preclude the possibility of protecting laborers and material men without possible injury to the interests of the state. The insertion of a clause giving laborers and material men the protection of the bond and the right to sue upon it for their own benefit in the name of the commonwealth, is in clear contravention of the statute and of the legislative intent and is void.

2. The words "material furnished" for any structure, work or improvement, in contracts of this kind, applies only to such materials as enter into and become component parts of the structure, work or improvements contemplated and do not include machinery, tools, fuel, oils or appliances used for the purpose of facilitating the work; nor does it include houses or stables used for such purposes, nor loss of time nor any other expenditure incurred for things which do not remain as a component part of the finished whole.

Argued Feb. 28, 1912. Appeal, No. 1, Feb. T., 1912, by plaintiff, from judgment of C. P. Clinton Co., July T., 1910, No. 124, for defendant in case of Commonwealth to use of Joseph B. Strunk v. Empire State Surety Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Assumpsit on a bond.

HALL, P. J., filed the following opinion:

On June 4, 1909, E. M. Good entered into a contract with Joseph W. Hunter, state highway commissioner, for the improvement of a certain section of highway in the township of Lamar, Clinton county, extending from the borough line of Mill Hall to the bridge over Cedar Run, a distance of about 7,310 feet, under the provisions of the Act of assembly of May 1, 1905, P. L. 318, of which the section having to do with this case is as follows:

"All work done under the provisions of this act shall be by contract, according to plans and specifications to be prepared by the State Highway Commissioner, as hereinafter provided: and, in awarding said contracts, the work shall be given to the lowest and best bidder, with the option on the part of the State Highway Commissioner to reject any or all bids, if the prices named are materially higher than the estimated cost of the work, as provided for. Every person, firm or corporation, before being awarded any contract for the construction or improvement of any highway under the provisions of this act, shall furnish a bond, acceptable to the State Highway Commissioner, in a sum equal to the contract price of the work, conditioned upon the satisfactory completion of the same, and to save harmless the State, county and the townships, in which the work may lie, from any expense incurred through the failure of said contractor to complete the work as specified, or for any damages growing out of the carelessness of said contractor or his or its servants."

The agreement contained a stipulation that payments were to be made under it as follows: "Ninety per cent of each monthly estimate, the balance when bond is released." A bond was filed bearing even date with the agreement executed by E. M. Good as principal and by the Empire State Surety Co. as sureties, which contained the condition prescribed by the act of assembly and also the following stipulation: "And in consideration of the premises the said E. M. Good, principal, and the Empire State Surety Company, jointly and severally, further covenant and agree with the said commonwealth of Pennsylvania that every person or persons having a claim for any sum alleged to be due by the said contractor for any labor or material furnished in or about the construction of said highway, which shall have remained unpaid for a period of sixty days after the work has been done or the material furnished, shall have the right to bring suit upon this obligation and to recover such sum as may be justly

due him or them, such suit to be brought in the name of the commonwealth of Pennsylvania, for the use of the person or persons having such claim and no suit shall be a bar to other suits, but as many suits may be brought upon this obligation as there shall be persons having .claims as aforesaid, provided that the aggregate of all the judgments thereon obtained shall not exceed the penal sum aforesaid, and provided that judgment in said suits shall be paid in order of priority of the institution thereof and all judgments obtained on suits brought on any one day shall share pro rata if the amount payable under this obligation be sufficient to pay the same in full."

On the same day that the bond and agreement were executed E. M. Good assigned to the Union Trust Company, of Lancaster, Pa., all moneys due or to become due under his contract.

In pursuance of the contract E. M. Good entered upon the work and incurred certain indebtedness which is the foundation of this suit.    He also did some additional work not specified by the contract for which he was allowed credit as extras as shown by the final estimate, marked defendant's exhibit "B," and on December 17, 1909, the commonwealth paid his assignee in full for all work done under the contract and for all extras.

Upon the trial of the case the facts were not in dispute and a verdict was directed for the plaintiff for the full amount of his claim with the understanding that the legal questions involved should be determined upon a motion for judgment for the defendant non obstante veredicto which now comes on to be heard.

The defendant denies liability on the bond for three reasons, all of which raise important questions of law.

First, because there is no privity of contract between the plaintiff in this suit and the Empire State Surety Company.

Second, because the commonwealth has violated its contract with E. M. Good, to the prejudice of the rights of his sureties, by paying in full to his assignee the amount

due under the contract instead of reserving ten per cent until the release of the bond.

Third, because the debt upon which this suit is brought is not for any labor done or material furnished in or about the construction of said highway within the meaning of those words as used in the contract of surety.

We will take up the discussion of these questions in their order because if any of them be sustained the case of the plaintiff must fall.

As to the first point: it is a general rule that a plaintiff in an action on a simple contract must be the person from whom the consideration of the contract actually moves and that a stranger to the consideration cannot sue upon the contract. In many states, however, power is conferred expressly upon municipalities by the legislature to provide by contract, either that a bond be given by the contractor that he will pay for all labor and material furnished in carrying out the contract, or to provide that sufficient moneys may be retained by the municipality to cover all unpaid claims against the contractor for labor and material furnished, and where this power is expressly conferred by the legislature there can be no question as to the validity of such contracts, and the weight of authority seems to sustain the powers of municipalities to make such contracts, even though they are not expressly authorized by the legislature, upon the theory that where the municipality is authorized to contract for improvements it is impliedly authorized to make all collateral provisions reasonable and proper to effect the principal object of the contract, and that the provision in the contract by which laborers and material men are secured their pay for all the work performed for the contractors performing the work under municipal contract is necessary and proper to make on the part of the municipality in order that skilled labor and good material may be secured; for otherwise, as in most instances, no liens exist against a municipality for labor or material furnished; unless the contractor is personally responsible it may be hard, if

not impossible, for him to secure skilled labor and good material necessary for him to carry out the terms of the contract. This doctrine was laid down in the well considered opinion in the case of Barker v. Bryan, 64 Iowa, 561 (21 N. W. Repr. 83); and in St. Louis v. Von Phul, 133 Mo. 561 (54 Am. St. Rep. 695; 34 S. W. Repr. 843); the latter case was cited and followed as authority in Devers v. Howard, 88 Mo. App. 253; the same conclusion was reached in American Surety Co. v. Raeder, 15 Ohio C. C. 47; Lyman v. Lincoln, 38 Neb. 794 (57 N. W. Repr. 531); Sample v. Hale, 34 Neb. 220 (51 N. W. Repr. 837); Korsmeyer Plumbing & Heating Co. v. McClay, 43 Neb. 649 (62 N. W. Repr. 50); Kaufmann v. Cooper, 46 Neb. 644 (65 N. W. Repr. 796); State v. Liebes, 19 Wash. 589 (54 Pac. Repr. 26).

The reasons given for the doctrine laid down in this line of cases does not seem to apply, however, to the contract under consideration, because it contains a provision to the effect that "all of said work and labor shall be done and performed in the best and most workmanlike manner and that both materials and labor shall be in strict and entire conformity with the specifications and plan; all of said materials and labor shall be subject to the inspection and approval of the State Highway Commissioner, or his duly authorized assistant, and in case any of said material or labor shall be rejected by the said State Highway Commissioner, or his assistant, as defective or unsuitable, then the said materials shall be removed and replaced with other materials, and the said labor shall be done anew to the satisfaction and approval of said State Highway Commissioner, or his assistant, at the cost and expense of the party of the second part." And the further provision that "if in the opinion of the said State Highway Commissioner the party of the second part shall be prosecuting the said work with an insufficient force of workmen or with an insufficient supply of materials for the prompt completion of said work, or shall be improperly performing the said work, or shall dis-

continue the performance of said work before completion, or shall neglect or refuse to supply acceptable material or shall neglect or refuse to remove such material or to perform anew such labor as shall be rejected by the said State Highway Commissioner as defective or unsuitable, then in any such case it shall be lawful for the said State Highway Commissioner, and he is hereby authorized and empowered to employ such contractor or use such method as in his opinion shall be required for the proper completion of the said work, at the cost and expense of the said party of the second part." It would seem, therefore, that in the case under discussion the state had ample power to protect itself against failure of the contractor to procure skilled labor and good materials to carry out the terms of the contract.

A conclusion precisely contrary to the authorities above cited has been reached in some jurisdictions, thus in Park v. Sykes, 69 N. W. Repr. 712, it was held that a municipality had no implied authority to take such security and could not do so in the absence of express statutory authority. In Kaufmann v. Cooper et al., 65 N. W. Repr. 796, it was held that the granting of a contract by the state for the construction of a building was a sufficient consideration to sustain a promise on the part of a contractor to pay for all labor and material supplied him in the performance of the agreement. And in Philadelphia v. H. C. Nichols Co., 214 Pa. 265, it was held that where a contractor's bond to secure subcontractors and material men, required by city ordinance, has been voluntarily given, it may be enforced according to its terms, although it exceeds the requirements of the ordinance. To the same effect are the cases of Com. v. Clipsham, 16 Pa. Superior Ct. 50, and Bowditch v. Gourley, 24 Pa. Superior Ct. 342.

In the case of the Buffalo Cement Co. v. McNaughton, 90 Hun, 74, it was held that a person furnishing labor and material to a city contractor could not sue on the bond given by him to the city conditioned on his payment of

all bills for labor and material used in performing the contract, unless there was an intent on the part of the city to make the bond for their benefit, and an obligation of the city to them which would create a privity of interest.

In Lyth v. Hingston, 14 N. Y. App. Div. 11 (43 N. Y. Supp. 653), ADAMS, J., says: "The plaintiff seeks to maintain this action upon the theory that although not a party to the bond upon which this action is founded nor privy to its consideration they may nevertheless avail themselves of the indemnity which it assumes to furnish to parties who supplied labor and materials in the performance of a contract entered into by the principal obligor with the city of Buffalo. . . . It must therefore be regarded as the settled law in this case that before the plaintiffs can avail themselves of any indemnity which the bond in suit assumes to afford they must show (1) an intent upon the part of the promise to secure to them such benefit, and (2) some privity between the promises and the parties benefited and some obligation or debt owing from the former to the latter which would give them a legal or equitable claim to the benefit of the promise. So far as the question of intent is concerned there is ample evidence on record to show that one of the objects which the city of Buffalo must have had in view in requiring the defendant McGregor to execute the bond in suit was to secure those who might render services or furnish materials with which to perform his contract, which the city was under no obligation to pay them nor would it have suffered any loss or harm had resort been had to what is known as the Municipal Lien Law. But as has been shown intent is but one of the elements which must be present in this case; and by itself it is not sufficient to establish a cause of action unless there exists also some privity of contract between the plaintiff and the city. The rule to which reference has just been made as having been settled by the more recent decisions is one which is very general in its application but it is, nevertheless, one which is subject

to legislative interference, provided the intent upon the part of the legislature to interfere is made plain and explicit. An illustration of this right of interference with the common law respecting the very question under consideration is furnished by some of the city charters of this State."

We do not take into consideration the cases decided in this state relating to sheriffs' bonds, probate bonds, mechanics' liens bonds and bonds given under city ordinances, especially those under the Philadelphia ordinances, because in all of these the provisions in the bond was expressly authorized by statute and there is no question in such cases of the right of the material men to recover. The question presented in the present case is whether there may be recovery under such a provision in the bond in the absence of statute authority. And in the absence of other difficulties we would be disposed to hold that the defendants would be estopped from denying liability created by the express provision in the instrument itself, even in the absence of a statute authorizing it, especially as a statute in this case provides that the bond to be given shall be acceptable to the state highway commissioner. Unfortunately for the defendant, however, the statute in this case also limits the amount of the bond to a "sum equal to the contract price of the work." There is no penal sum and no means by which the highway commissioner may go beyond the price fixed. It was undoubtedly the intention of the legislature that this bond was to be given for the protection of the commonwealth and for the purpose of indemnifying it from suits for negligence and in the event that Good failed to complete his contract in the manner specified, but the highway commissioner went beyond that legislative intention and inserted a clause by which it was also agreed that the bond might be used for the protection of every person having a claim for any sum alleged to be due for labor and materials furnished which subjects it to the objection suggested by the court in the case of

the City of Lancaster v. Frescoln, 192 Pa. 452; 203 Pa. 640; 22 Pa. C. C. Rep. 225.  Suppose that by reason of the failure of a contractor he had failed to pay his labor and materials and that the aggregate amount of such claims equalled the amount of the bond, "Could it be claimed for a moment that the laborers and material men could recover on the bond to the detriment of the city itself? or in case such laborers and material men, as their claims became due, sued on the bond for their own benefit, could they thus have exhausted it to the peril of the city in case of default of the contractor in fulfilling the terms of his contract.  Under no circumstances could the surety be called upon for more than the amount of his bond and under such conditions who would be entitled to reap the benefit of it?  It is not a sufficient answer to this question to say that this state of affairs is never likely to arise. No one, as to the future, can make absolute prophecy and we but illustrate what could happen—it being the unexpected—if the plaintiff's theory of this case be the true one.  We are not here dealing with probabilities or improbabilities but simply with the legal rights of the parties claiming on the bond given under its strict terms for the city's benefit and that alone.  It is obvious that the purpose of the city both in spirit and in letter was only to protect its own rights."  The plaintiff's only answer to this proposition in the brief filed by his counsel is that to avoid such contingency it is the duty of the commonwealth to exact a bond of sufficient amount to cover such a contingency and this no doubt the commonwealth would have done if there had been any legislative intention to protect laborers and material men.  That they had no such intention is clearly shown by the fact that the state makes it impossible for the highway commissioner to demand a bond that will cover such contingency by limiting its amount to the contract price.

After a careful consideration of all these and many more authorities we have arrived at the conclusion that the rigid rule of the common law that no man can sue upon

a cause of action arising out of an agreement to which he was not a party and for which he had not contributed to the consideration, although now greatly modified in this country by statute and by decisions governing various states of fact had not been modified so as to permit in the present case. Such a conclusion is demanded, if for no other reason, at least upon the ground of public policy. The bond required by the good road act being intended for the protection of the state alone and so limited in its amount as to be incapable of expansion for the protection of other interests, the additional stipulation which was inserted in the bond under consideration without statutory authority is in derogation of the rights of the state and therefore void. If it were not for the limitation of the amount of the bond and the legislative intent expressed in the present case it would be otherwise, for we would then have no difficulty in finding that it is within the power of the proper officers of the state in entering into an agreement on behalf of the state for improvements to insert such a stipulation in the bond even without statutory authority for so doing, where there is no statutory direction to the contrary.

We conclude it now to be the law that the common-law rule that there can be no recovery except where there is privity of contract between the plaintiff and the defendant may be set aside by express statutory provision where the intention of the statute is clearly expressed for that purpose and even in the absence of such statutory provisions the rule may be waived by a contract voluntarily entered into with a state or municipality, provided there is no statutory provision to the contrary; but where, as in this case, the statute clearly intends that the bond shall be for the protection of the state alone and limits its amount so as to preclude the possibility of protecting others without possible injury to the interests of the state, the insertion of a clause giving laborers and material men the protection of the bond and the right to sue upon it for their own benefit in the name of the commonwealth, being

clearly in contravention of the statute and of the legislative intent, is void.

As to the second contention of the defendant that there can be no recovery because the state paid the contractor the full amount due him under the contract instead of reserving ten per cent until the release of the bond, as it agreed to do, it is argued by the counsel for the plaintiff that the law is well settled to the contrary by analogy by the rule laid down in Philadelphia v. McLinden, 205 Pa. 172; Philadelphia v. Stewart, 195 Pa. 309; Lesley v. Kite, 192 Pa. 268, which hold that this is no defense in an action by laborers or material men under the Philadelphia ordinances because in those cases the city had no right to withhold payment from the principal contractor as it was under no obligation to pay the claims or to see that they were paid, the claimants having no right to the fund in its possession which could be enforced either by lien or by judgment. There is some distinction, however, between these cases and the one we have under consideration. Here the state has expressly contracted with the surety company that it will reserve ten per cent of the contract price until its bond shall be released and it admitted that if this had been done, and the surety company had been held to be liable under its bond for the claims of laborers and material men, then ten per cent remaining in the state's hands would have been sufficient to cover all such claims, and while it is true that the claimants themselves could not have attached this fund there can be no question that the surety company could have recouped itself out of it by reason of its contractual relation with the state. In this case the action of the state in paying over the full amount of the contract price to the contractor would have been a distinct injury to the surety in violation of its contract and we think it would have released the bond so far as any obligation to the state was concerned. We do not think, however, that any action on the part of the state, no matter what its effect might be upon its own rights, could

affect the obligation of the surety to the laborers and material men, if that clause of the contract were capable of enforcement otherwise. However, in view of our decision upon the first point in the case this question becomes immaterial.

As to the defendant's third contention that the plaintiff's claim in this case, which is for coal oil, tools and nails, does not cover material furnished in or about the construction of said highway within the meaning of those words as used in the contract of surety, it seems to be sustained not only by the Supreme Court of this state but also by the uniform decisions of the appellate courts of all the states where the question has been raised. We have been unable to find a case to the contrary. The settled rule seems to be that the words "material furnished" for any structure, work or improvement, in contracts of this kind, applies only to such materials as enter into and become component parts of the structure, work or improvements contemplated and do not include machinery, tools, fuel, oils or appliances used for the purpose of facilitating the work, nor does it include houses or stables used for such purpose, nor loss of time nor any other expenditure incurred for things which do not remain as a component part of the finished whole: Moyer v. Pennsylvania Slate Co., 71 Pa. 293; Allen v. Elwert, 29 Or. 428 (44 Pac. Repr. 823), and other cases cited under the heads of "Materials" in 5 Words and Phrases Judicially Defined, 4409 et seq. These decisions strike us personally as excellent illustrations of how fine a hair may be split. Just why a material man who furnishes the spike should be protected and the material man who furnishes a hammer, without whose agency it could not be driven, should be left out, when of course nobody ever had any such intention when the contract was drawn, is a matter quite beyond our poor powers of comprehension. Neither do we understand why there is a liability on the bond for days' time when work was actually performed on the structure and no liability on the bond for a day's time

when work was not performed owing to some unavoidable circumstance which prevented it and for which time the contractor himself is liable.    But it is the law, and this fact irrespective of all the other questions raised would defeat recovery in this case.

The rule is, therefore, made absolute and it is ordered and decreed that judgment be entered in the above case for the defendant non obstante veredicto.

*Error assigned* was the judgment of the court.

*George A. Brown,* with him *T. M. Stevenson,* for appellants.

*R. B. McCormick,* for appellee.

OPINION BY HEAD, J., July 18, 1912:

This appeal and the two following were argued together because the controlling questions in all are identical, save only that in the appeal of Tevling, infra, p. 000, the right of recovery is specially challenged on the ground that the articles, for the price of which he sues, were not "material furnished in or about the construction of the highway" within the meaning of the bond on which he bases his action.    The learned judge below entered judgment non obstante veredicto for the defendant in each case, and in an opinion filed states at length the reasons supporting such judgment.

We concur in the conclusions reached by the learned judge, and are further of the opinion that he has set forth sound and satisfactory reasons on which they may rest. Nothing would be gained by a further discussion of them here.

Judgment affirmed.