Commonwealth, to use, et al., Appellants, v. R. L. Bonham Co. et al.

Argued April 15, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

516

W. B. *Eilenberger,* with him *Charles W. Matten,* and *Harvey Huffman,* for appellants.—Plaintiff's theory is that both defendants are bound under the contract and bond for the excavation and borrow made in and about the construction of the highway in question at the price per cubic yard stated in said contract, the quantity to be determined by the estimates of the state highway department: Phila., etc., v. Jackson, etc., 280 Pa. 319.

The quantity was determined in accordance with the terms of the contract.

It is plaintiff's position that the inspectors were ministerial officers of the State, and as to their official conduct all things are presumed to be done rightly and legitimately and all actions are presumed to be regular: Brown's License, 18 Pa. Superior Ct. 409; Phila. v. Com., 52 Pa. 451; Bank of Schuylkill v. Co., 190 Pa. 188.

The cardinal principle in the law of damages is that the person injured in his person or property shall receive compensation for all actual pecuniary loss or personal injury which may directly result from the wrongful act or omission complained of: Stauffer v. Soap Co., 151 Pa. 330.

This rule applies whether the action is assumpsit or in tort: Musser v. Ry., 13 Lanc. L. Rev. 369, 15 Pa. C. C. R. 430; McKnight v. Ratcliff, 44 Pa. 156.

Even if the surety was not liable, judgment should have been entered against R. L. Bonham Co.: Cleary v. Cab Co., 285 Pa. 241.

*Lewis M. Stevens,* of *Stradley, Ronon, Stevens & Denby,* with him *Chester H. Rhodes,* of *Rhodes & Gearhart,* for appellees.—It is submitted that the use-plain-

tiff, failing to present evidence of what the estimates of the state highway department were, and in fact preventing by objection such evidence being introduced, has failed to establish any breach of contract by the general contractor of its contract with the use-plaintiff.

The use-plaintiff's testimony was wholly inadequate to establish liability for claims for extra work.

Defendants in this action on the bond are not liable to the use-plaintiff for claims for labor performed outside the scope of the general contract and not performed in pursuance to the provisions of the general contract, to secure the performance of which the bond was given: Phila., to use, v. Malone, 214 Pa. 90; United States, to use, v. Surety Co., 50 Pa. Superior Ct. 404; Com., to use, v. Surety Co., 253 Pa. 5; Robertson v. Indemnity Co., 77 Pa. Superior Ct. 422; Phila., to use, v. Jackson & Co., 280 Pa. 319.

OPINION BY MR. JUSTICE KEPHART, September 30, 1929:

The use-plaintiff, claiming as a subcontractor, sued on a bond given to the Commonwealth of Pennsylvania for the successful completion of work done in connection with a state highway. The bond was taken pursuant to the several Acts of Assembly governing work done on state highways. These were fully discussed in Greene County v. Southern Surety Co., 292 Pa. 304, 317. As pointed out in that case, laborers or materialmen may sue the surety on a bond given for public contracts under a statute or ordinance, where the right is clearly created for their protection. Such third parties do not come within our general rule as regards third-party beneficiaries.

The use-plaintiff engaged to perform all excavations and fills "on state highway contract Monroe County, Polk, Chestnut Hill and Hamilton Townships, Route No. 164...... The term excavation as herein used shall mean the removal of any and all earth, rock, trees,

stumps, roots and other material from such points as are indicated by the instructions of the state highway department and depositing the same where necessary to make the required fills, or to waste the same in case there is a surplus of excavated material."

The evidence showed 52,773 cubic yards of earth were excavated and moved, for which it was claimed defendant was liable in the sum of $70,238.52; of this, $46,457 was paid. At the trial the difference was reduced to $15,845.21, of which $2,987 was tendered at trial, the balance for about 9,700 yards at $1.32 a yard remaining unpaid. Use-plaintiff contended this quantity was moved by the orders of the general contractor and the state highway department, and used in and about the highway.

A surety is not liable on the bond unless it appears the unpaid work was done pursuant to the contract the bond purports to cover. Where suit is instituted on a bond in connection with public work, by a subcontractor or materialman, while the contract of the latter with the general contractor may be material as showing the relation of the subcontractor or materialman to the particular job, the principal contract between the obligors and the obligee named in the bond must be the instrument on which liability is predicated. The surety is not liable beyond his engagement in that contract. Moreover, in this case, the subcontractor brought the general contract into his work when he agreed "to do and perform all excavation......on state highway contract ......on Route No. 164." The contract with the state highway department, however, was not admitted in evidence, and we have no information as to its terms, or the plans and specifications, by which the surety might be made liable for the excess material moved.

There was evidence, given by one of the state employees, that a certain amount of yardage had been moved in connection with the general contract, but, unless agreed to, this would not be sufficient to establish

liability on the bond, without showing in detail all matters covering the movement of that yardage. The state employee who testified was careful to qualify his testimony by saying the yardage moved was not the yardage under which the general contractor was to receive payment. There is likewise no estimate of the number of yards for which the general contractor received payment.

The use-plaintiff contends its contract with the general contractor controls, and it does not require the excavation to be subject to the plans and specifications of the general contract, but subject only to the quantity found to be moved under the subcontract. Appellant forgets it is a third party dealing with a contract in which it is not named as a party. It is brought in by an Act of Assembly to receive the benefit of the contract, and it can do so only as the principal contract provides. The plans and specifications are a very material part of this contract and they are not here. But we need not rest the case on this proposition.

The use-plaintiff's own contract makes the general contract govern the situation. In addition to having written into it the agreement with the State, it specifically provided that the quantity was to be determined by the estimates of the state highway department; there was not a single estimate submitted in evidence under this provision. Nor is that the only feature which determines appellant's rights; when it comes to payment under this contract, it provided that the general contractor "shall pay to the party of the second part within an average of three days an amount equal to 85% of the value of the work performed by the party of the second part at the price herein mentioned as determined by the quantities set forth in the state highway estimate." Not a scintilla of evidence was presented in relation to this feature of the contract.

The difficulty arose from the fact that the grade was raised too high in this work and the subcontractor bor-

rowed earth to make the fill. If the grade was too high at the suggestion of the general contractor, and beyond the plans and specifications of the state highway department, the general contractor might be liable in some action, but the surety would not be responsible for work done beyond the terms of the plans and specifications. When the state highway department lets a contract, having a definite grade fixed for its roadbed, if the grade thus established is exceeded, the state highway department is under no compulsion to pay for it, and what the state highway department is not liable for to the general contractor, the bond is certainly not responsible for, nor can the general contractor, the other defendant, be held liable in this suit, as the action is on the bond, and not directly on the subcontract.

Much reliance is placed on Philadelphia v. Jackson, 280 Pa. 319, where, in stating the test of liability for a surety, we said: "The materials in controversy were designed to become component parts of the finished work...... In other words, the point of the decision in question is not to be found in the degree of physical incorporation which is essential to a recovery for materials admittedly within the terms of the bond, but rather in the character of the materials and the purpose for which they were furnished." This may well cover all materials which enter into a contract within a limited amount, or what might be ascertained as being reasonably necessary for the completion of the job; it certainly does not mean that a subcontractor can load up with materials beyond any reasonable requirement for the job at hand and then hold plaintiff or the surety liable for the excess material. A safe ground on which to rest such cases is the one used by the court,—the material reasonably necessary for the work. The materialman must know from the nature and character of the work what is reasonably necessary.

The case before us, however, does not concern materials furnished for a piece of work; it has to do with

the nature and extent of the work. The highway department has fixed a grade line as well as outside lines, and the character of construction that was to enter into this particular job. As well might it be said that a contractor, in building a house, could double its capacity and hold the bond liable, as to say that a subcontractor or contractor could increase the grade and hold the bond or the state highway department liable for the departure. Of course that cannot be done, and while exactitude in the execution of these contracts is not necessary, substantial compliance is. Nine or ten thousand yards excess in a contract involving some forty thousand yards is not substantial compliance.

Quantity, including the 9,000 yards, was not the sole determinative feature. That quantity must be supplemented with evidence that it was the quantity moved under the plans and specifications; it would have included the necessary yardage to go into the general work; but, as we said above, all information on this is lacking, as we have neither plans, specifications, estimates nor the general contract.

Lest there might be some misapprehension as to the fact that the State reported a yardage in excess of that paid for, it may be noted that, in arriving at the quantity of earth moved, the engineers on the ground returned to the state highway department the exact yardage or quantity excavated. The paying department of the state highway department calculates from the contract the grade lines in the plans and specifications, exterior lines, slopes and fills and so forth, and on that basis finds the actual payable yardage. In doing so it found that the grade lines had been raised. Of course this is one way to boost the yardage, but not one for which payment may be enforced against the bond.

The court below did not err in refusing recovery on the pleadings and evidence submitted.

Judgment affirmed.