## Independent Bridge Co. et al. *v.* Aetna Casualty and Surety Co., Appellant.

Argued April 19, 1934.

Before Trexler, P. J., Keller, Baldrige, Stadt-feld, Parker and James, JJ.

*E. C. Higbee* of *Higbee, Matthews & Lewellyn,* for appellant.

*T. L. Morgan,* for appellee.

Opinion by James, J., October 3, 1934:
This is an action of assumpsit by a materialman

against the surety on a bond. At the trial the court directed a verdict for plaintiff for the full amount claimed and later refused defendant's motion for a new trial and judgment n. o. v. and final judgment was entered in favor of the plaintiff, from which judgment this appeal was taken.

In April, 1925, Greene and Fayette Counties awarded to Independent Bridge Company a contract to build a bridge across the Monongahela River at Masontown. On April 15, 1925, the bridge company sublet the work of building the substructure and bridge approaches to the H. B. Mish Company. On May 22, 1925, the Mish Company and defendant as its surety gave the bridge company a bond conditioned that Mish Company should perform and complete its subcontract and should indemnify the bridge company against any and all claims of materialmen and laborers. The bond contained the following additional stipulation: "...... and it is hereby further stipulated and agreed that the said principal and said surety jointly and severally further covenant and agree with said Independent Bridge Company that any person or persons having a claim for any sum alleged to be due by said principal for *any labor or materials furnished in 'or about the construction of said contract* ...... shall have the right to bring suit upon this obligation ...... Such suits may be brought in the name of the Independent Bridge Company for the use of the person or persons having such claim." (Italics ours.)

The bond in suit refers to the contract for the construction of the substructures and bridge approaches as per plans and specifications made a part of the contract as if written therein and the condition of the bond is for the performance of said contract by the subcontractor, H. B. Mish Company, in accordance with 'the plans and specifications furnished therefor

and to which reference is there made and the same are made a part thereof as if fully incorporated therein.

The contract entered into between Independent Bridge Company and H. B. Mish Company provided, inter alia: ''(3) The subcontractor agrees, at his own expense, to furnish all material, labor, tools, equipment, supplies, superintendence and field engineering and service of 'every description necessary to construct complete in every particular, and to actually construct complete in every particular and to the entire satisfaction of the officials of Fayette and Greene Counties, Pennsylvania, or their agents, the following portions of the work of constructing said highway bridge: Item 'D'—referred to as such in the proposal form and specifications covering the substructure complete in every detail, including Fayette County abutment and heavy retaining wall shown 'on Sheet No. 9 of the plans, pedestals No. 1 and No. 2 on the Fayette County 'side and No. 3 and No. 4 on the Greene County side, piers 'A,' 'B,' 'C,' 'D,' 'E,' and 'F,' together with all concrete, reinforcing steel, structural steel 'in piers, sand stone ashlar masonry, excavation, back fill, sheeting, bracing, *cofferdams* and pumping, caissons and temporary work of every nature necessary to complete these foundations in every particular.'' (Italics ours.) Item ''E'' covered the bridge approaches.

During the period from August 22nd to September 16, 1925, plaintiff delivered quantities of lumber that were used in the construction of the cofferdams, a temporary structure used and necessary in building the bridge piers, and also furnished a gin pole, a large straight hickory pole fifty-five feet long, that was necessary to carry the bucket containing the concrete. The Mish Company did not pay for these items for which suit was brought against the surety on the bond.

The only question argued by the appellant on this appeal is that the lumber furnished was not material or labor within the meaning of the bond for the reason that said material did not become part of the completed structure.

Undoubtedly the settled rule seems to be that the words "material furnished" for any structure work or improvement in contracts of this kind apply only to such materials as go into and become component parts of the structure work or improvements contemplated and do not include machinery, tools, oils or appliances used for the purpose of facilitating the work nor does it include horses or stables used for such work, nor loss of time nor other expenditure for things which do not remain a component part of the finished whole: Com. to use of Fields v. National Surety Co., 253 Pa. 5, 97 A. 1034; Com. to use of Strunk v. Empire State Surety Co., 50 Pa. Superior Ct. 404; Com. to use of Schooley v. Aetna Cas. & Surety Co., 101 Pa. Superior Ct. 314; City of Phila. to use of Clothier et al. v. Perna Eng. & Cont. Co., 94 Pa. Superior Ct. 579; Com. to use of Read Corp. v. Stryker, Inc., 109 Pa. Superior Ct. 137, 167 A. 459, but recently this court (See Boro. of Castle Shannon v. Collinger, 110 Pa. Superior Ct. 144, 167 A. 629) and the legislature, as evidenced by the following acts, Act of May 7, 1929, P. L. 1590; Act of June 9, 1931, P. L. 386; Act of June 22, 1931, P. L. 880; Act of June 23, 1931, P. L. 932, in providing for bonds of a similar character, have adopted a far more liberal view and in passing upon the present contract, if its language is broad enough and has not been passed upon adversely, we should adopt a view in accordance with what its language fairly intended.

We are familiar with the well established rule that in interpreting a surety bond the obligation can not be extended beyond the plain import of the words

used yet, if a reasonable interpretation of the language covers the materials involved, we should not hesitate to say so. The scope of the bond is to be determined in the light of the purpose or contemplation of the principal contract: City of Phila. to use of Am. Bridge Co. v. Jackson & Co. Inc., 280 Pa. 319, 324, 124 A. 446; Com. to use of Wells et al. v. Bonham Co. et al., 297 Pa. 514, 147 A. 611; City of Phila. to use of Dourte & Irelan, Inc. v. Stange, 306 Pa. 178, 159 A. 7. The present contract contemplated the erection of the substructure and bridge approaches and provided specifically for the erection of cofferdams necessary in the construction of the piers. The language is in no sense restrictive but is broad and comprehensive enough to include work that the contract specifically provides shall be performed in the erection of the substructure or piers and if under the contract it was necessary for the contractor to do the specific thing for which the materials were furnished, we believe it to be within the language of the bond which provides that "materials furnished in and about the construction of the contract" were on default of the principal to be paid for by the surety. In adopting this view we are supported in that the main condition of the bond provided, that the Independent Bridge Company should be saved free and harmless from the payment of any claims for material on account of the construction of the improvement, while in the clause relating to those who had the right to bring suit, it provided for claims for materials furnished in or about the construction of the contract. Clearly the term "contract" has a much broader significance than "improvement."

We have examined with care the decisions of this court and the Supreme Court cited by appellant and we believe there is a clear distinction between the

language of the surety bonds in those cases and the language involved in this case.

The cases largely relied upon by appellant are: Com. to use of Read Corp. v. Stryker, Inc., supra; Com. to use of Wells v. Bonham Co. et al., supra; Com. to use of Fields v. National Surety Co., supra; Com. to use of Am. Steel & Wire Co. v. Aetna, 309 Pa. 263, 163 A. 530; Com. to use of Schooley v. Aetna Cas. & Surety Co., supra; City of Phila. to use of Clothier v. Perna Eng. & Cont. Co., supra; City of Phila. to use of Am. Bridge Co. v. Jackson & Co. Inc., supra, City of Phila. to use of Dourte & Irelan, Inc., supra; and Lancaster to use v. George et al., 315 Pa. 232, 315 A. 232.

In Lancaster v. George, supra, and Com. v. Stryker, supra, the claim was for rental due on machinery, which clearly was not within the language covered by "materials furnished." (Com. v. Aetna, supra; Phila. v. Jackson, supra.)

The cases of Phila. to use of Dourte & Irelan, Inc. v. Stange, supra; Com. to use of Wells v. Bonham, supra; Com. to use of Fields v. National Surety Co., supra, and Com. to use of Am. Steel & Wire Co. v. Aetna Cas. & Surety Co., supra, we do not believe to be in any sense applicable to the present controversy, as the nature of the work done and materials furnished and the language of the bond were not similar to the present situation. The two cases largely relied upon by appellant are Com. to use of Schooley v. Aetna Cas. & Surety Co., supra, and City of Phila. to use of Clothier et al. v. Perna Eng. & Cont. Co., supra. The Schooley case was a suit against a surety for lumber, nails and roofing paper used in the erection and construction of forms into which the cement and concrete were poured resulting in the formation and erection of the two bridges on said highway. When completed the lumber, etc., did not remain as a com-

ponent part of the highway. The language of the contract provided for all material furnished and labor performed in and about the construction of said highway, under which language it was clearly restricted to the material furnished and labor performed to the highway itself. Neither does it appear from the report whether the contract of the subcontractor specifically covered the erection of the forms for which the material was furnished.

In the case of Clothier et al., in which suit was brought on a surety bond for lumber furnished where it appeared that the materials consisted of forms, sheathing and shoring used in connection with the construction of a sewer, the bond provided for the payment of all sums of money which may be due for materials supplied and furnished in and about the performance of the work covered by the above mentioned contract; it does not appear that the contract provided for the sheathing and shoring for which the lumber was used.

In applying these views to the facts in the present case, the court below was correct in finding that the lumber used in the construction of the cofferdams was covered by the bond, but we do not agree with its conclusion that the gin pole was also covered. This was an appliance or equipment for the benefit and advantage of the contractor, but was not within the terms of the contract, and no recovery should have been allowed for that item.

Subject to the deduction of the amount allowed for the gin pole, the judgment is affirmed.