Philadelphia School District, to use, Appellants,
*v. B. A. Shrages Co., Inc. et al.*

Argued December 12, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Emanuel Moss,* of *Moss & Moss,* for appellant.

*Robert C. Fable, Jr.,* with him *Raymond A. White, Jr.,* for appellee.

OPINION BY KELLER, P. J., March 3, 1939:

The School District of Philadelphia on November 8, 1937 awarded to B. A. Shrages Co., Inc. three separate contracts for painting the auditoriums of certain school buildings.

One contract covered the auditoriums of four school buildings, to wit, Crossan Public School, J. S. Jenks Public School, Kinsey Public School and Philadelphia Normal School, and was in the amount of $1965.

A second contract covered the auditoriums of three other school buildings, to wit, Blankenburg Public School, Cassidy Public School and Mann Public School, and was in the amount of $1285.

The third contract covered the auditoriums of three

other school buildings, to wit, Disston Public School, Edmonds Public School and Lawton Public School, and was in the amount of $1245.

New Amsterdam Casualty Company became the contractor's surety on all three contracts, and with the contractor executed separate bonds to the school district and an additional joint and several bond for the protection of laborers and material men on each contract in the amount of the respective contract price. These bonds were furnished pursuant to the requirements of the Act of May 29, 1931, P. L. 243, pp. 255, 256, amending, inter alia, section 617 of the School Code of May 18, 1911, P. L. 309, which required, in contracts in excess of $500, an additional bond "conditioned for the prompt payment of all material furnished and labor supplied or performed in the prosecution of the work whether or not the said material or labor enter into and become component parts of the work or improvement contemplated." The statute also provided: "Every such additional bond shall provide that every person, co-partnership, association, or corporation, who, whether as sub-contractor or otherwise, has furnished material or supplied or performed labor in the prosecution of the work as above provided, and who has not been paid therefor may sue in assumpsit on said additional bond in the name of the school district for his, their, or its use, and prosecute the same to final judgment for such sum or sums as may be justly due him, them, or it, and have execution thereon."

In each contract, the contractor covenanted and agreed: "to furnish and deliver all the material and to do and perform all the work and labor required herein in accordance with the specifications attached ......
That all of the material used in the said work shall be of the best of their several kinds and qualities, and that all of the said material and work shall be subject to the inspection and approval of the Department of Buildings of the Board of Public Education ...... and

in case any of the material or work, or both, shall be rejected as defective or unsuitable then the said material shall be replaced with other material and the said work shall be done anew immediately to the satisfaction and approval of the said Department of Buildings at the cost and expense of the said Contractor." We refer to this because, in an action brought by a sub-contractor or material man on the contractor's additional bond, the liability of the surety is based on the principal contract between the school district and the contractor rather than on the contract between the contractor and the sub-contractor (*Com. to use v. Bonham Co.*, 297 Pa. 514, 147 A. 611; *Phila. to use v. Stange*, 306 Pa. 178, 159 A. 7), and must be considered in applying the provisions of the bond.

Each bond had the same condition, which was as follows:

"Now the condition of this obligation is such, That if the said Principal [B. A. Shrages Co.] and his subcontractors, if any, shall and will promptly pay or cause to be paid to any and every person, copartnership, association, or corporation interested, any and all sum or sums of money which may become due for all material furnished and labor supplied or performed in the prosecution of the work, whether or not the said material or labor enter into and become component parts of the work or improvement contemplated, and shall and will likewise pay for all machinery employed on or about such work or improvement, and shall and will comply with all the Rules of The Board of Public Education of said School District and the provisions of the School Code, approved May 18, 1911, P. L. 309, its supplements and amendments; then this Obligation to be null and void; otherwise to be and remain in full force and virtue.

"Every person, copartnership, association, or corporation who, whether as sub-contractor or otherwise, has furnished material or supplies or performed labor or

supplied machinery, in the prosecution of the work as above provided, and who has not been paid therefor, may sue in assumpsit on this Bond in the name of the School District, for his, her, their, or its use, and prosecute the same to final judgment, for such sum or sums as may be justly due him, her, them, or it, and have execution thereon; but the School District shall not be liable for the payment of any costs or expenses of any such suit.

"Proof satisfactory to the Secretary and Business Manager of The Board of Public Education of said School District shall be furnished that written notice of the delivery of the material, of the performance of the labor, and/or of the use of the machinery was given to the above named Principal or Surety herein within ninety (90) days after the delivery of the material, the performance of the labor and/or of the use of the machinery."

It will be noted that the condition of the bonds as respects the prompt payment of all material furnished and labor supplied or performed in the prosecution of the work is almost in the exact language prescribed by the Act of 1931, supra. The clause as to payment for machinery *employed* on or about said work or improvement was not required by the statute; but such a bond may be more comprehensive than is required by ordinance or statute, and will be enforced according to its terms: *Bowditch v. Gourley*, 24 Pa. Superior Ct. 342; but that clause is not applicable here, for there is no machinery involved in this case, and later provisions of the bond [see the last clause quoted above] show that it related to payments of rental for the *use* of machinery supplied, rather than for the purchase of the same.

The plaintiffs in this action, trading as Moulton Ladder Company, sold to the contractor, B. A. Shrages Co., Inc. between November 10, 1937 and December 4, 1937 certain ladders, trestles and extension trestles, step

ladders, ladder jacks, scaffolding jacks, tooth pick flanks, planks and extension planks, guard rails, etc., for use, and used by the contractor, in the prosecution of the work undertaken by said contractor and covered by said contracts, of the total value of $1179.06, on which the contractor paid them $679, leaving a balance due of $500.06. The contractor having neglected and refused to pay this amount the plaintiffs brought this action in assumpsit against the contractor and the surety on its bonds.

In their statement, the plaintiffs did not aver that they had sold and delivered, or furnished, to the contractor *materials* in the prosecution of the work covered by the contracts and bonds, or had supplied machinery used by the contractor in such prosecution; they contented themselves by averring that they had sold certain goods and merchandise to the defendant, B. A. Shrages Co., Inc., that they were sold upon the faith of and in reliance upon the additional bonds furnished as above stated, and that the goods and merchandise were necessary and useful and used by B. A. Shrages Co., Inc. in the prosecution of the work undertaken by the defendant, Shrages, under the contracts before referred to.

The principal defendant, B. A. Shrages Co., Inc. did not file an affidavit of defense. The surety, New Amsterdam Casualty Company, filed an affidavit raising a question of law, under section 20 of the Practice Act of May 14, 1915, P. L. 483. The grounds alleged for asking judgment in its favor were: (1) The statement of claim and exhibits thereto clearly indicate that the goods and merchandise sold by the use plaintiffs to B. A. Shrages Co., Inc. were not such items as were contemplated by the bonds entered into by the New Amsterdam Casualty Company and attached to plaintiffs' statement of claim as Exhibits D, E and F; (2) the statement of claim and exhibits failed to allege the instant suit involves money due for "material furnished ......

in the prosecution of the work," or that it is for "machinery employed on or about such work or improvement" within the meaning of the bonds executed by the New Amsterdam Casualty Company and attached as Exhibits D, E and F of the plaintiffs' statement of claim; (3) the statement of claim and exhibits thereto failed to set forth a valid cause of action against the defendant, New Amsterdam Casualty Company.

After argument on the rule, the court on October 25, 1938 sustained the question of law raised by the surety defendant and entered judgment in its favor. On October 27, 1938 judgment was entered in favor of the plaintiffs against the principal defendant, B. A. Shrages Co., Inc., for $528.42 for want of an affidavit of defense.

Plaintiffs appealed from the order entering judgment for the defendant, New Amsterdam Casualty Company.

The question at issue in this appeal is whether the apparatus and equipment sold and delivered by plaintiffs to the contractor, B. A. Shrages Co., Inc., which were used by it on the painting jobs covered by its contracts with the School District of Philadelphia for painting school auditoriums, were *material furnished in the prosecution of the work,* within the contemplation and intendment of said contracts and of the bonds given to secure their performance. We agree with the court below that they were not.

It is well settled that prior to the Act of 1931, supra, bonds given on public work, as security for the prompt payment by the contractor of "any and all sums of money which may become due for all material furnished in and about the work" contracted for, did not cover or include *equipment and apparatus* such as is claimed for in this suit. Appellants frankly concede this. The limitations imposed by the decisions in construing the term 'material furnished' were referred to by us in *H. H. Robertson Co. v. Globe Indemnity Co.,* 77 Pa. Superior Ct. 422, 427, where we said: "It has been ruled in a number of decisions in this state that

a bond conditioned for the payment of *materials furnished in and about the construction of public work* of this character covers only such materials as 'enter into or become a part of the visible work which was directed to be done': *Phila to use v. Malone,* 214 Pa. 90, p. 97; or as stated in *United States to use v. American Surety Company (No. 2),* 21 Pa. Superior Ct. 159, p. 160: 'The right of the private individual to recover against the surety is confined to claims for labor and materials which go into the public work.' Hence there could be no recovery under such a bond for grain and feed furnished for the contractor's stock: *Lancaster v. Frescoln,* 203 Pa. 640, p. 642; nor for coal furnished to run a steam shovel: *Phila. to use v. Malone,* supra; nor for machinery, tools, appliances or fuel used in the work: *Com. to use v. Empire State Surety Company,* 50 Pa. Superior Ct. 404; nor for dynamite, fuse, caps, etc.: *Com. to use v. National Surety Company,* 253 Pa. 5, p. 14." Accordingly, in that case, we affirmed the court below which had refused to enter judgment against the surety on a contract for constructing a county road, for the value of materials furnished by the use plaintiff which were condemned and did not enter into the construction of the road, even though such condemnation was due to the negligence of the contractor.

Along the same line, see *Independent Bridge Co., for use of Jackson v. Aetna Casualty & Surety Co.,* 318 Pa. 236, 178 A. 473, which reversed the judgment of this court in 114 Pa. Superior Ct. 406, 174 A. 791, and held that lumber used by the contractor in erecting coffer dams, necessary for the construction of the bridge but not forming part of the completed structure, was not 'material furnished' within the contemplation of the contract and bond; and *Independent Bridge Co., for use of Ainsley v. Aetna Casualty & Surety Co.,* 316 Pa. 266, 175 A. 644, which held that coal used in firing boilers employed by a subcontractor in building the approaches and substructure of the bridge was not within the con-

tractor's bond, which covered only "material actually incorporated in the completed job"; a gin pole, used by the subcontractor in conveying concrete to the bridge, was held to be an appliance for the subcontractor's benefit and advantage, and no recovery could be had for it in a suit on the bond: *Independent Bridge Co., to use of Jackson v. Aetna Casualty & Surety Co.*, 114 Pa. Superior Ct. 406, 413, 174 A. 791. See also, *Com. to use of Schooley v. Aetna Casualty & Surety Co.*, 101 Pa. Superior Ct. 314, where lumber, nails and roofing paper used in the construction of temporary forms into which cement and concrete were poured for the construction of bridges, were held not to be within the protection of the bond; *City of Phila., to use of Clothier v. Perna Engineering & Contracting Co.*, 94 Pa. Superior Ct. 579, which excluded lumber furnished for the construction of temporary forms, sheathing and shoring used in connection with the construction of a sewer.

It was, perhaps, the hardship and injustice which sometimes resulted from this rule—see, inter alia; Judge HALL's discussion on p. 415-416 of *Com. to use v. Empire State Surety Co.*, supra—that led the legislature in 1931 to enlarge its definition of 'material furnished and labor supplied or performed' so as to include "all material furnished and labor supplied or performed in the *prosecution of the work, whether or not the said material or labor enter into and become component parts of the work or improvement contemplated,*" pursuant to which provision the present bonds were given.

Since the Act of 1931, supra, it is clear that material supplied for the prosecution of the work, but which may have been condemned and removed, due to the negligence of the contractor (see *H. H. Robertson Co. v. Globe Indemnity Co.*, supra), or which was used and consumed in the prosecution of the work but did not become a component part of the improvement, (see *Com. v. Ciccone*, 316 Pa. 111, 173 A. 642, where the surety was held liable for gasoline and oil used by the

contractor in the operation of trucks used on the work, as compared with the prior rulings in *Phila., to use v. Malone,* 214 Pa. 90, 97, 63 A. 539; *Com. to use v. National Surety Co.,* 253 Pa. 5, 14, 97 A. 1034), are within the protection of such a bond.

But we think there is a clear distinction between such material and the *purchase* of *equipment, apparatus and appliances* which were not *intended* to go into or become a part of the improvement, or to be consumed or used up in the prosecution of the work, but which were intended as aids or appliances which the contractor would naturally be expected to furnish, and which he would take away with him on the completion of the work, to be used by him in like manner on subsequent contracts. See *Phila. to use v. Jackson,* 280 Pa. 319, 324, 124 A. 446; *Com. to use of Read Corp. v. Stryker,* 109 Pa. Superior Ct. 137, 142, 167 A. 459; *Com. to use of Garman v. Stryker,* 112 Pa. Superior Ct. 449, 452, 171 A. 298. Thus it is settled that the term 'material furnished' used in the Act of June 23, 1931, P. L. 932, sec. 1905, which is identical in this respect with the Act of May 29, 1931, P. L. 243, supra, does not cover a claim for the rental of machinery used on a sewer contract, (*Lancaster to use v. George,* 315 Pa. 232, 172 A. 686).

In *Phila. to use v. Jackson,* 280 Pa. 319, 124 A. 446, the bond was conditioned for the prompt payment of any and all sums of money which might be due for labor or materials or both, furnished, done, performed or supplied upon, *in or about the said buildings or work.*[1] The use plaintiff furnished the contractor with certain structural steel for the purpose of the construction of the building, but before any of the material had been placed in the building the original contractor became financially embarrassed and ceased work. Chief

---

[1] Rather than 'in and about the construction of the work,' as was the usual form.

Justice Moschzisker, speaking for the Supreme Court, called attention to the difference in the form of the bond from that passed upon in *H. H. Robertson Co. v. Globe Indemnity Co.*, supra, and allowed a recovery against the surety, saying: "Appellant's contention that materials which are the subject of a suit must in every instance have actually entered into the physical structure of the work involved, cannot be sustained. Under a bond like the one before us, it is sufficient if the materials are of a character contemplated by the original contract, were furnished in good faith for the purpose of incorporation into the work covered by that contract, and were suitable for the object in view...... This determination is not affected by subsequent events such as those in the present case, where the materials were lawfully seized by the city, delivered to the new contractor in strict compliance with the municipality's rights under the original contract, and will, as appellant admits, presumably be used in the structure contemplated by that contract." (pp. 323, 324). He then discussed the "well-established doctrine" that the words "material furnished" for any structure, work or improvement, in contracts of that kind, apply only to such materials as enter into and become component parts of the structure, work or improvement contemplated; and said that the point of the decisions establishing that doctrine "is not to be found in the degree of physical incorporation which is essential to a recovery for materials admittedly within the terms of the bond, but rather in the character of the materials and the purpose for which they were furnished" (p. 324, 325).

A reference to the word 'material' as used in the contracts between the school district and the contractor, as above recited, on which contracts, as we have shown, the liability of the surety must be based, satisfies us that it was there used to denote materials which were *designed* to enter into and become part of the finished work, such as white lead, color, linseed oil, etc., whether

they actually became such or were rejected as defectively or unsuitably mixed or applied, or materials that would be consumed on such work, whether or not they became a component part of the completed work, and was not intended to afford protection to persons who sold the contractor equipment, appliances or apparatus, which would not enter into or be consumed in the work, but, at its completion, would be taken away by the contractor, intact and entire, and used on other jobs.

In our opinion, it was never contemplated or intended that the protection afforded laborers and material men on a $1245 contract could be practically exhausted by a dealer selling the contractor permanent equipment and appliances in the amount of $1179, which was not designed to enter into the work or be consumed in its execution, but would be taken away, entire and intact, by the contractor on its completion and used on other jobs, for, perhaps, years to come.

We recognize that judgment should never be entered in favor of the defendant on a question of law, if the plaintiff, by amendment, can make out a case to be submitted to the jury; but in the present case the plaintiffs refused to amend, probably because they could not aver that any of the merchandise sold was designed or intended to enter into the work being performed or to be consumed in its execution.

Judgment affirmed.