JACKSON, et al, Respondents, v. FEDERAL SURETY CO., Appellant.

(228 N. W. 400.)

(File No. 6612. Opinion filed December 31, 1929.)

Sterling, Clark & Grigsby, of Redfield, for Appellant.
Martens & Goldsmith, of Pierre, for Respondents.

CAMPBELL, J. Concrete Engineering Company, a corporation, hereinafter mentioned as the contractor, was awarded a contract for road construction work, including some culverts and bridges on Federal Aid Project No. 163, being a part of state trunk highway No. 85 in Butte and Lawrence counties, S. D.; the performance thereof being bonded by defendant Federal Surety Company. The form of the contract and bond and the provisions thereof are identical, excepting as to description of location and specific work to be performed, with those referred to and recited in Dennis v. Enke, 55 S. D. 15, 224 N. W. 925.

The contract bears date July 28, 1924, and appears to have been formally awarded by the state highway department on July 26, 1924. The contract bond was executed by the contractor on July 29, 1924, and by the defendant surety company on September 2, 1924. Plaintiffs instituted this action again defendant surety company in April, 1926, seeking to recover $1,397.97, with interest, claimed to be due as an unpaid balance on the purchase price of certain structural steel furnished by plaintiffs to the contractor and used by him in the performance of the contract in question. The case was tried to the court without a jury, and findings, conclusions, and judgment were in favor of plaintiffs for the full amount asked, from which judgment and an order denying its motion for a new trial defendant has appealed.

■ The performance of the contract in question required the use of certain beams and other structural steel for bridges, etc. While the formal award was not made until July 26, 1924, nor the contract executed until July 28, 1924, yet it appears from the record that bids were opened by the highway department for the work in question on June 10, 1924, and it would seem that from and after June 10, 1924, the contractor knew that his was the low bid, and that he would presently, and in due course, receive the formal award of the contract, and he appears to have commenced to arrange for his materials, etc., prior to the formal award; for on date of June 23, 1924, respondents made a proposal to the contractor for the furnishing of structural steel for this particular job in the following language:

"Concrete Engineering Co., Rapid City, S. Dak. We propose to furnish all Structural Steel subject to all terms and conditions stated herein and on the reverse side of this proposal, for Law-

rence-Butte Counties, S. Dak., F. A. P. 163 which were awarded purchaser at Pierre, S. Dak., June 10, 1924.

24—8"x33# H-beams ................................. 24' 0"
32—18"x54.7# I-beams ............................. 35' 9"
2—Fabricated Struts ............................... 18' 7"
    "Above material to ship to Spearfish, S. Dak.

42—8"x33# H-beams ............................... 24' 0"
8—15"x42.9# I-beams .............................. 33' 9"
50—12"x31.8# I-beams ............................. 25' 9"
2—Fabricated Struts ............................... 18' 7"
    "Above material to ship to Belle Fourche, S. Dak.

"We agree to furnish all of the above material, to be shipped subject to sight draft attached to Bill of Lading at following prices:

I-beams, from mill ......................$3.47 per cwt. base
H-beams, from our stock to ship with 'I' from
    Mill ................................$4.21 per cwt. net
Fabricated Struts ......................$5.00 per cwt.

"Prices are F. O. B. Belle Fourche or Spearfish, South Dak.
                "Pittsburgh-Des Moines Steel Co.
                        "By Gordon R. Lunt."

The foregoing proposal was accepted by the contractor on June 26, 1924, by indorsement to that effect thereon in a form provided for that purpose, and is also indorsed under date of July 2, 1924,, with the approval of Geo. A. Smith, one of the members of respondent copartnership. It is to be observed that by the proposal the material to be furnished was to be shipped "subject to sight draft attached to bill of lading." It is also entirely clear that the proposal and acceptance form a complete and valid contract for the purchase and sale of the merchandise therein described upon the terms therein stated.

At the time this proposal was made and accepted, by virtue of prior dealings entirely unconnected with the contract or project here involved, there was a balance due from the contractor to respondents for materials previously furnished on other jobs in the amount of $4,397.97, which had been unpaid for such a length of time as to have accumulated approximately $248 accrued interest.

Prior to the contract evidenced by the proposal and acceptance above set forth, respondents in their dealings with the contractor had extended credit, and had not previously required the contractor to take up sight draft against bill of lading as materials were furnished. One of respondents' witnesses states that they knew the contractor was slow with its payments, and in reply to the question, "When did you get scared of them?" answered, "About the time this contract was taken."

Nearly a month after the execution of this contract, and under date of July 26, 1924, and at a time when it was already legally bound to furnish the materials for Federal Aid Project No. 163 upon payment therefor by sight draft for the purchase price thereof against bill of lading as embodied in the proposal and acceptance, regardless of any previous balance due, respondents wrote to the contractor the following letter:

"Pittsburgh-Des Moines Steel Co.

"Des Moines, Iowa. July 26, 1924.

"Concrete Engineering Company, Rapid City, South Dakota. Atten: Mr. C. J. Laughlin. Gentlemen: In view of the fact that we are all striving under very drastic conditions at the present time, we wish to be as lenient as possible, and after counseling with the Credit Manager, Mr. Elmer Murray, we have mutually agreed to present the following proposition to you.

"The amount of the sight-draft on your two new orders to Belle Fourche and Spearfish under F. A. P. 163, Lawrence-Butte Counties, shall be approximately $7,415.00. The amount you owe us at the present is $4,379.97, which has been due for some time. There has accumulated interest in the amount of $248.00, which makes a total of $4,645.97.

"Now, what we propose is this. Upon receipt of steel for Belle Fourche and Spearfish, it shall be necessary for you to pay the sight-draft of approximately $7,500. We wish to take this amount and apply on your old account and thus square this up, leaving a payment of approximately $3000 on the new account or a balance of the same amount that you owed us before. In case you clear up your accounts in full by October 1st, we are willing to waive the interest charge, which is $248.00 up to July 31st.

"We wish you to write us a letter authorizing us to handle this money in the manner as outlined above, which we consider a

mighty fair proposition to you and sincerely hope that you shall appreciate the business value of such an offer, and we shall receive the authorization in a few days.

"Very truly yours,
"Pittsburgh-Des Moines Steel Co.
"GRL:G                                           Gordon R. Lunt."

The contractor replied under date of July 28, 1924, by letter, which regarding this matter reads as follows:

"Referring to yours of July 26th relative to application of funds which you will receive from us when we take up bill of lading on the new order of steel; it will be agreeable to us for you to apply the amount on the old account as outlined in your letter."

Respondents appear to have had some lingering doubts, even at that time, as to the entire validity of the proposed arrangement, and under date of August 4, 1924, wrote the contractor as follows:

"We have your reply to Mr. Lunt's letter advising what we propose to do in settlement of the past due account and your acceptance to same.

"Enclosed you will find contract to be signed authorizing us to handle the payments as we have outlined.

"Trusting that the account will be settled in a short time in full, we are                 Yours truly,
"Pittsburgh-Des Moines Steel Co.
"Credit Manager."

The document therewith inclosed was not promptly signed and returned, and, under date of August 28, 1924, respondents wrote the contractor further concerning the matter as follows:

"This is to advise that we have not received signed agreement relative to applying payment of the sight draft shipments received on the old account.

"We advised you as to an extension on this particular matter on the 15th and would appreciate your assistance at this time enclosing signed agreement.

"Our stamped envelope is enclosed herewith for your convenience.                 Yours truly,
"Pittsburgh-Des Moines Steel Co.
"E. L. Murray."

On September 8, 1924, the contractor seems to have signed and returned the document referred to in respondents' letters of August 4th and August 28th. It is on the letter head of respondents and addressed to respondents, and reads as follows:

"Gentlemen: You are hereby authorized to apply money received, in payment of sight draft shipments to Belle Fourche and Spearfish F. A. P. No. 163, Lawrence-Butte Counties, S. Dak., on the present past due account of $4,397.97. The balance of money received to apply as payment on the sight draft shipments.

"Also, you are to add the accrued interest of the past due contracts to our account, if payment in full is not made on or before October 15, 1924.

"Freight f. o. b. destination is to be deducted from the drafts and freight bills attached to check for credit on the account.

"Accepted this 8th day of Sept. 1924.

"Concrete Engineering Company,

"By Geo. C. Keown."

Meantime, however, the steel which was embraced in two separate shipments had gone forward; the first shipment was made, pursuant to the proposal, to the contractor at Belle Fourche, S. D. It was shipped from Des Moines July 31, 1924, and was of the total invoice value of $3,378.75. The bill of lading was attached to a sight draft on the contractor for that amount, and forwarded for collection to the First National Bank of Rapid City. The shipment, of course, was purchased f. o. b. destination, but it was the custom to send shipments forward freight charges collect, and for the contractor to take up the sight draft by first paying the carrier's charges and then paying the balance of the sight draft to the collecting bank. On the shipment in question the bill of lading was taken up by the contractor by paying to the carrier freight charges amounting to $650.97, and by paying to the collecting bank the sum of $2,730.30, being the balance of the invoice price plus $2.52 exchange. Respondents, who were under obligation to deliver f. o. b. destination, thus had the carrying charges paid by the contractor instead of advancing them, received the net cash balance on the invoice in the sum of $2,727.78, and subsequently issued a credit memo to the contractor for $650.97.

The second and final shipment was made from Des Moines consigned to Spearfish, S. D., on September 3, 1924. The total

invoice value of this shipment was $3,089.44, and sight draft for that amount was forwarded to the First National Bank of Rapid City for collection. By some error in the shipping department of respondents the bill of lading, instead of being attached to the sight draft, pursuant to the contract and as respondents intended, was sent direct to the contractor. The contractor took up this shipment by paying the freight charges of the carrier in the amount of $599.50 on September 10, 1924, and by sending its check to respondents on September 24, 1924, for the balance of the invoice or $2,489.94, and respondents subsequently issued credit memo to the contractor for $599.50 for the freight paid.

These two cars of material, the full invoice price of which was paid at the time they were received in the manner above outlined, constitute all of the material furnished by respondents which was used in the performance of the contract involved in this case. No other materials were subsequently furnished by respondents to the contractor at any time, so far as the record shows, but on December 24, 1924, the contractor paid to respondents the sum of $2000 in cash, and on March 31, 1925, the further sum of $1000 in cash.

Meantime, and on September 4, 1924, a "Joint Control Agreement" was entered into between the contractor and appellant in the following language:

"Joint Control Agreement.

"In consideration of the Federal Surety Company having executed our bond as Bridge Contractor on Federal Aid Project No. 163, in the sum of $31,999.20, we do hereby agree with the said Federal Surety Company to deposit all money received on estimates on said contract in the First National Bank at Rapid City, South Dakota, and same to be withdrawn therefrom only upon the countersignature and consent of N. J. Hendrickson, representing the said surety company.

"Dated at Rapid City, South Dakota, this 4th day of September, 1924.

"Concrete Engineering Company.
"By C. J. Laughlin, Director.

"Acceptance of Trust.

"I, N. J. Hendrickson, do hereby agree to act as joint control agent for the Federal Surety Company, in the matter of the

Bridge Contract on F. A. P. No. 163, as set forth in the above joint control agreement, and to countersign checks only for payment of lienable claims under said contract.

"Dated at Rapid City, South Dakota, this 4th day of September, 1924.

"N. J. Hendrickson.

"Acknowledgment by Bank.

"The First National Bank of Rapid City, South Dakota, does hereby acknowledge receipt of the above joint control agreement and agrees to handle matters as therein provided.

"Dated at Rapid City, S. Dak., this 4th day of September, 1924.

"First National Bank, Rapid City, S. Dak.
[Name of Bank]
"By A. S. Halley, Pres."

And all payments made pursuant to the contract were subsequently deposited in accordance with said joint control agreement.

Appellant surety company never had any knowledge or notice of the arrangement which respondents attempted to make with the contractor whereby, when the shipments of material for this job were taken up by payment of sight draft against bill of lading, the proceeds of said sight draft should be first applied to the old balance due from the contractor to respondents. The net result of the situation is that the contractor took up sight draft against bills of lading for all materials furnished by respondents for this job, thus paying to respondents a sum exactly equivalent to the purchase price of such materials, and, in addition, paid respondents the further sum of $3,000 in cash. Admittedly there is a balance due from the contractor to respondents of $1,397.97. As a matter of bookkeeping respondents applied the payments first to the old balance of $4,397.97, and thereafter to the invoice price of the materials furnished for the present contract. Respondents therefore claim that the unpaid balance of $1,397.97 is due upon materials furnished for the job in question, and that the surety is liable therefor. Appellant, on the other hand, contends that the materials furnished for the present job were paid for when received by taking up sight drafts against bill of lading, and that, so far as they are concerned, the unpaid balance of $1,397.97 is upon the old account, with which they had nothing to do.

It is apparent that respondents were endeavoring to do two inconsistent things. They were attempting to secure cash for the new materials furnished, and at the same time to make such payment applicable to a prior indebtedness. One of respondents' witnesses testified as follows:

"We made only two shipments under contract. They consisted of two separate cars of structural steel. When we sent the first car of steel we sent with it a sight draft for the full value of that steel, under the terms of the contract, Exhibit 2, and attached a Bill of Lading. That sight draft was taken up with the Bill of Lading and paid in full. That sight draft did not contain any claim for material except such as was contained in that carload. We sent one more carload under this contract, Exhibit 2, and sent a sight draft to the First National Bank of Rapid City covering all of the items that went into this second shipment. The sight draft covered no other items except what was contained in the second shipment. Sight draft, Exhibit 7, covered all of the material that went into this project under the first shipment and the second sight draft covered all of the items that went into this project under the second shipment. * * * From the time that this contract Exhibit 2 was given and being carried out we not only received pay for all of the material that went into that project, but we also received pay to reduce our former account from $4397.97 to $1397.97. * * * Prior to the time we made our contract, Exhibit 2, we did not require the Concrete Engineering Company to take up sight drafts before they received the goods that we shipped. We did not start that until after we made our contract Exhibit 2. We were expecting that the Concrete Engineering Company would pay for that material when it was delivered to them for use in this particular project. We gave them no credit on these two shipments."

The contractor is now insolvent. He completed his work in December, 1924. The final estimates were made and final payment made by the state to the contractor in the sum of $5,527.35 on March 20, 1925. Respondents were advised by the state highway department on March 14, 1925, that final payment would go forward within a very few days. Respondents never advised the state highway department of any claim against the contractor for any unpaid balance for materials furnished in the per-

formance of this contract. On March 23, 1925, the contractor furnished to appellant proof by affidavit that all claims were paid, whereupon the joint control agreement was released, and the balance on hand thereunder in the amount of $3,438.36 was paid over to, and receipted for, by the contractor. Appellant had no knowledge or notice that respondents claimed any amount due to them or unpaid for any materials furnished upon this contract or at all, and the first notice of any kind received by appellant that respondents were making any claim against it was the service of the summons and complaint in this action. On November 2, 1925, respondents instituted an action against the contractor for the recovery of the balance of $1,397.97, and the contractor confessed judgment, but appellant was not a party to that proceeding, and had no notice or knowledge thereof.

We may judicially notice that an accepted and customary method of selling goods for cash without extending any credit therefor is to ship them sight draft against bill of lading. Whatever may be the situation as between respondents and the contractor, we are entirely satisfied, under all the circumstances of this case, that, when respondents made the agreement hereinbefore set out for the furnishing of the materials in question, and thereafter and pursuant thereto shipped the materials with sight draft for the exact invoice price thereof attached to bill of lading, and the contractor paid the sight drafts and took up the bills of lading and receievd the materials, so far as appellant is concerned, respondents will not thereafter be heard to say that the payment of the sight drafts was any other or different payment than a payment for the goods shipped and represented by the bills of lading.

The judgment and order appealed from are reversed, and the cause remanded, with directions to enter a judgment of dismissal with costs to defendant.

SHERWOOD, P. J., and POLLEY, BURCH, and BROWN, JJ., concur.