DENNIS, Respondent, v. ENKE (STATE HIGHWAY COM-
MISSION et al, Garnishees; FEDERAL SURETY CO.,
Intervener), Appellant.

(224 N. W. 925.)

(File No. 6475. Opinion filed April 13, 1929.)

*Sterling, Clark & Grigsby,* of Redfield, for Appellant.
*Boyce, Warren & Fairbank,* of Sioux Falls, for Respondent.

CAMPBELL, J.   On May 20, 1924, the state highway commission entered into a contract with one Enke, doing business under the name of Enke Construction Company, whereby, for a consideration approximating $62,973.04 computed at unit prices, Enke agreed to do certain road construction work on state trunk highway No. 15, also known and designated as federal aid project 164. At the time of the execution of this contract, Federal Surety Company, a corporation, as surety, executed and delivered a bond in the penal sum of $62,973.04, the condition of which bond was as follows (italics ours):

"Now therefore, the condition of the foregoing obligation is such that if the said Principal *shall well, truly and faithfully comply with and perform all the terms, covenants and conditions of said contract, on his part to be kept and performed* according to the

terms and tenor of said contract, and shall protect the said State of South Dakota against and pay any excess of costs as provided in said contract, and all amounts, damages, costs, judgments which may be recovered against said State or its officers or agents, or which the State of South Dakota may be called upon to pay to any person or corporation by reason of any damages arising or growing out of the doing of said work or the repair thereof or the manner of doing same, or the neglect of said Principal or his agents or servants, or the improper performance of said work by the said Principal or his servants or agents or from any other cause growing out of the said contract, and if the above bounden Principal, his heirs, executors, administrators or assigns, *shall and will well and truly pay or cause to be paid the wages stipulated and agreed to be paid each and every laborer employed by the principal, his agent, or subcontractor and all claims incurred for materials, supplies, tools and appliances, in carrying out the provisions of said contract,* then this obligation is null and void, otherwise to remain in full force and virtue.

"And the said Surety hereby stipulates and agrees that no change, extension, alteration, deduction or addition in or to the terms of said contract or the plans or the specifications accompanying the same, shall in any wise affect the obligation of said Surety on this bond."

The contract itself provided in part as follows:

"The said Contractor further agrees to pay all just claims for materials, supplies, tools, appliances and labor, and all other just claims incurred by him or any of his sub-contractors in carrying out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims."

On September 15, 1924, Enke purchased of H. R. Dennis & Sons Tractor Company a certain used caterpillar tractor, and gave his notes in payment in the amount of $3,000, which notes were thereafter assigned to H. R. Dennis, plaintiff herein. Dennis commenced an action against Enke to recover an unpaid balance of $2,411.21 upon said notes and caused garnishment process to be served upon the state highway commission. Thereupon the Federal Surety Company intervened, alleging the execution of the contract between Enke and the highway commission and its suretyship in that connection, alleging that the contract had been fully

performed by Enke, and that there was still due to him from the state $8,619, but alleging an assignment of said sum by Enke to intervener, and that there were numerous unpaid claims for labor, materials, and supplies contracted for by Enke in the performance of said work, the total amount thereof being approximately $11,-349.26, for which the surety was liable; and the intervener prayed that the garnishment of Dennis be set aside and that the balance of $8,619 due from the state on account of the work on federal aid project No. 164 be paid over to the intervener to apply upon unpaid claims incurred by Enke in the performance of the work for which intervener was liable as surety. Thereupon the plaintiff Dennis put in an answer and counterclaim alleging that the notes upon which suit had been brought by him against Enke were for the purchase price of a tractor purchased by Enke for use in the performance of the contract in question, and alleging that the intervener was liable therefor pursuant to the terms of its bond, and praying judgment accordingly. The case was tried to the court without a jury, and findings, conclusions, and judgment were for the plaintiff upon its counterclaim against the intervener, the judgment being for the sum of $2,411.21, the balance due on the tracr notes given by Enke to Dennis.

From this judgment, and from an order denying its motion for a new trial, the intervener has appealed.

Very similar contracts and bonds have recently had the attention of this court in the cases of Anderson Lumber Co. v. National Surety Co., 49 S. D. 235, 207 N. W. 53; March v. Butler, 53 S. D. 170, 220 N. W. 461; Dennis v. Great Northern Construction Co., 53 S. D. 646, 222 N. W. 269; and Finch v. Enke, 54 S. D. 164, 222 N. W. 657. In all of these cases the provisions of the contract and bond, construed together, were substantially the same as those involved in the present case, and, as we pointed out in the Anderson Case, supra, the obligation of the surety under the terms of these bonds is undoubtedly extremely broad in its scope.

In the Finch Case, this court quoted with approval from the case of Franzen v. Southern Surety Co., 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496, as follows: "We think, in short, that where labor or material furnished is *necessary or even proper,* for the execution of any particular work, under a contract like that in the case at bar, and the furnishing of such labor and material may be

fairly held to have been in contemplation of the parties when executing the contract and the bond therefor, and the same is of a nature so as to be necessarily wholly consumed in the particular work, then it is protected under a contract and bond like those in the case at bar."

As indicated by the brief but nevertheless sapient dissenting opinion in the Finch Case, one eminent and learned member of this court entertained (and as I happen to know still entertains) the view that it would be sounder law to strike out from the foregoing quotation the words "necessary or even proper" and substitute in lieu thereof the words "reasonably necessary." This suggestion, however, notwithstanding its palpable merit, failed to meet with the approval which its perspicacity so well deserved, and the law of this state is established at this time as indicated by the foregoing quotation sans amendment.

The Anderson Lumber Co. Case, the March Case, and the Finch Case deal primarily with materials, supplies, and labor. This court has indicated in those cases that absolute and entire consumption in the work is not essential to liability, and liability is not necessarily prevented by the fact that there may be some salvage value in the materials or other supplies. It is enough if they were purchased directly and particularly for the work, were proper for the work, and were used therein, and consumed therein to such an extent that their residual value is a salvage value only as distinguished from a new value, as illustrated by pipe cut and threaded in certain lengths, lumber cut up and nailed in place to make a tool shed or a form for cement, etc. That these items have some residual value is of course true, but it is a very different value both in kind and amount from that of new lumber or new pipe in standard lengths and dimensions, and this court has held, under the circumstances of the cases heretofore considered, that the existence of some such residual salvage value did not necessarily prevent liability on the part of the surety.

The same rule was applied to the matter of minor tools and appliances in the Dennis Case, 53 S. D. 646, 222 N. W. 269, where the items involved were two scrapers at $25.50 each, and certain repair items, and where the court below found as a fact (the appeal being from the judgment only) that all of the items were purchased for the purposes of the contract and were practically worn out in carrying out the provisions of the contract.

In the instant case it is sought, we think, to extend the liability of the surety beyond the facts of any of the cases previously before us.

It is undoubtedly true that, under the terms of the bond and contract in this case, the surety is liable for claims for tools and for appliances and all other just claims "incurred in carrying out the provisions of the contract," but the fundamental test in all these cases must be what the parties may be fairly held to have had in contemplation at the time of the execution of the contract and bond. We do not think that the parties contemplated that the purchase price of every tool or every appliance which the contractor bought and made use of in the performance of the contract would constitute a "claim * * * incurred * * * in carrying out the provisions of the contract."

It is a matter of common knowledge that the performance of contracts of this kind requires a plant and equipment suitable therefor, many items of which are expensive and the purchase of which could not be justified by any single contract unless it was extremely large. It is further a matter of common knowledge that this kind of work is generally performed by persons who engage therein as a business and who maintain, for the purpose of the general contracting business, a very considerable amount of equipment intended and designed to be used in that business over a period of several years and in the performance of a number of contracts. We do not think it can be said to be within the contemplation of the parties that the surety on such a bond as this should be liable for the purchase price of tools and appliances which constitute and create, or become a part of, the general plant and equipment of the contractor, as distinguished from those minor tools and appliances which are consumed or practically consumed in the performance of a particular contract. The underlying principle which distinguishes between liability and nonliability is comparatively easy to perceive and grasp, difficult to phrase accurately, and still more difficult to apply precisely in border line cases. There must always be somewhat of a twilight zone in these cases between liability and nonliability dependent upon the facts in particular cases. The problem is similar to that faced by the cost accountant of a manufacturing plant in determining whether a certain tool or appliance should be charged as a direct expense

item to a particular job, or should be charged to plant and equipment; the estimated cost of its use in the particular job being ultimately taken into account by being embraced in the percentage of general overhead expense of plant equipment and factory charged to the particular job.

■ In order to create liability on the part of the surety for the purchase price of tools and appliances under these contract bonds, at least the following elements we think must be present: First, the tool or appliance must be purchased specifically and particularly for use in the performance of the particular contract; second, the use of such tool or appliance must be at least proper, if not reasonably necessary, in connection with and about the carrying out of the contract; third, the tool or appliance must be used in or about the performance of the contract; fourth, the tool or appliance must be such that it is reasonably to be expected in the natural course of events that its normal life for the purpose for which it was designed will be practically consumed by its use in and about the performance of the contract, and in this connection the facts of each particular case must be taken into consideration. For example, general experience indicates that a crew of men engaged in the performance of a contract of this kind lose and break numerous small tools and items of equipment, such as shovels, spades, hammers, etc., by reason of which they are for all practical purposes really consumed in the performance of the contract, notwithstanding the fact that such tools, if carefully handled and not lost, would be far from worn out by the actual amount of work for which they are used in the performance of a particular contract. If such small tools are purchased for the performance of the contract, are proper or reasonably necessary therefor, are used in such performance, and in such performance are lost or broken, and such loss or breakage is reasonably to be anticipated, it is entirely possible that the surety on the bond might be liable. In this connection also there should be considered, to some extent, at least, the proportion existing between the contract in question and the tool or appliance. It is at least conceivable that, if a contractor had a contract for grading work running into several millions of dollars which would necessarily take several years to perform, the surety on his bond might be liable for the purchase price of a $10,000 tractor, purchased specifically and particularly for that

operation, necessary therefor, and entirely worn out and consumed therein. If the same contractor had a contract for grading a short stretch of road for $3,000 which would take but a few days, and he purchased the same tractor to do it with, it is quite manifest that the surety on his bond would not be liable for the purchase price of the tractor. The broad distinction between items which are properly expense items and those properly chargeable to general plant and equipment of the contractor is indicated in Basshor v. B. & O. Ry. Co., 65 Md. 99, 3 A. 285; Miller v. American Bonding Co., 133 Minn. 336, 158 N. W. 432, and American Surety Co. v. Lawrenceville Cement Co. (C. C.), 110 F. 717, in which latter case the court said in part as follows:

"The ordinary lien statutes have been justly and strictly held to cover only what has added to the value of the property against which the lien is asserted, and therefore they are ordinarily administered to protect only what is actually incorporated into its substance. * * * Plainly, the act of congress and the bond in the case at bar are susceptible of a more liberal construction than the lien statutes referred to, and they should receive it. In the one case, as in the other, the dealings of the person who claims the statutory security must approximate the work, and in the one case as well as in the other there must be a certain margin within which there will be difficulties in discriminating between what is and what is not protected. * * *

"Except as herein otherwise stated, the report of the master is confirmed. The underlying principle which has governed him is correct, in that he has discriminated between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available not only for this, but for other work."

We come then to the application of the principles above discussed to the facts of this case.

The sixth finding of fact of the trial court was as follows:

"That at the time the said tractor was purchased the Enke Construction Company was just completing another job which it had from the State of South Dakota, near Flandreau, and that this tractor above described was purchased by the Enke Construction Company expressly for the purpose of completing the contract set out herein upon Federal Aid Project No. 164, and that the

tractor was used in carrying out the said contract on Federal Aid Project No. 164 from the latter part of September 1924, until the first part of June 1925, and that it was used constantly in hauling the grader upon that job, and that the purchase price of the said tractor was a just claim incurred by the Enke Construction Co. in carrying out the provisions of said contract for the construction of Federal Aid Project No. 164, and that the said tractor was an appliance used in the construction of the said highway and necessary for the construction of the same."

Examining the evidence, we find that the contractor Enke started work on federal aid project 164 about October 1, 1924, completing the work about June 10, 1925. Previous to commencing work on this project, he was engaged in performing a different and entirely separate road-grading contract in the vicinity of Flandreu, S. D. On the Flandreau job, Enke had some trouble with a sand hill which was delaying his work. He was anxious to complete the Flandreau job and commence work on his contract for federal aid project 164. He rented the secondhand tractor in question on a basis of $500 per month, and commenced to use it on the sand hill on the Flandreau job. Dennis offered to sell him the tractor and let him pay for it at the rate of $500 per month, and he bought it. This was while he was using the tractor on the Flandreau job, where he continued to use it for a week or ten days, until that job was completed, and then moved it over to federal aid project 164 and used it on that contract. He testified that one reason he bought the tractor was to make use of it in completing the Flandreau contract, but that at the time he bought it he also intended to use it in performing his contract on federal aid project 164. Enke further testified that he and his son, under the name of Enke Construction Company, have been engaged in road contracting for a number of years. He testified that he continued in the road-contracting business after completing federal aid project 164, and used this tractor in the performance of other contracts; that he moved it over into Minnesota and used it on some jobs there; that he afterwards used it in performing a road contract at Mankato; and that he has been using it since more or less. At the time of the trial on October 21, 1926, Enke testified that he still had the tractor, and that it constituted a part of his equipment as a road contractor; that he and his son had a number of

tractors, graders, and other equipment, and that this particular tractor was part of their general road-contracting equipment; that he was still in the road-contracting business and that this tractor was part of his plant; that it was suitable for use when in repair, and that it was ready to use.

We are doubtful whether the court's finding of fact hereinbefore set out is adequate to support the conclusions of law and judgment rendered thereon. If a construction be placed upon such finding which is sufficient as a matter of law, in the light of the principles hereinbefore indicated, to support the conclusions and judgment, then we are of the opinion that the clear preponderance of the evidence is against the finding as so interpreted. We think that the purchase of the tractor in question was an increase of the general plant and equipment of Enke in the road-contracting business. The tractor was not purchased exclusively for use on the particular job in question, nor was its usefulness consumed or practically consumed therein, and we do not think that the purchase price of this tractor under all the circumstances of this case can be fairly held to have been a claim "incurred * * * in carrying out the provisions of said contract" within the contemplation of the parties when the contract and bond were executed.

The judgment and order appealed from are reversed.

MISER, C., sitting in lieu of BROWN, J., absent.

SHERWOOD, P. J., POLLEY and BURCH, JJ., and MISER, C., concur.