WESTERN MATERIAL COMPANY, Respondent, v. ENKE, et al, Appellants.

(228 N. W. 385.)

(File No. 6504. Opinion filed December 31, 1929.)

*Sterling, Clark & Grigsby,* of Redfield, for Appellant.

*F. E. Ward* and *Hugh S. Gamble,* both of Sioux Falls, for Respondent.

CAMPBELL, J. In May, 1924, defendants Enke, under the name of Enke Construction Company, entered into a contract with the state of South Dakota for the performance of certain construction work on Federal Aid Project No. 164, being a part of state trunk highway No. 15 in Brookings and Moody counties, S. D. On August 11, 1924, defendant and appellant, Federal Surety Company, executed and delivered its certain bond in the penal sum of $62,973.04, guarantying the faithful performance of said construction contract. The contractor commenced his work "sometime the fore part of September, 1924," and completed the same "the fore part of June, 1925." This is the third appeal to this court in which the provisions of this identical contract and bond have been involved. See Finch v. Enke, 54 S. D. 164, 222 N.W. 657; Dennis v.

Enke, 55 S. D. 15, 224 N. W. 925. In the Dennis Case the provisions of the bond and contract are recited in some detail, and they need not here be repeated.

At divers dates between October 6, 1924, and November 1, 1924, both dates inclusive, plaintiff furnished to defendant Enke Construction Company certain parts and repairs for a ten-ton Holt caterpillar tractor used in the performance of the contract in question; the aggregate value of the items so furnished being $602.78. To recover payment therefor, plaintiff instituted this action against Enke Construction Company and its surety. A jury was waived and the matter tried to the court, resulting in findings, conclusions, and judgment in favor of plaintiff for the full amount asked, from which judgment and from an order denying its motion for a new trial defendant Federal Surety Company has now appealed.

Attached as an exhibit to the complaint is a detailed statement of the items furnished by respondent to Enke Construction Company. There is no dispute on the record as to the furnishing of the items or the value thereof. The statement shows that 49 different items were furnished at various dates during the period of time involved. The largest single item is under date of October 8, 1924, "1 No. 6253 Drive gear, $98.00." On October 25, 1924, there was furnished, "1 No. 6245 Countershaft, $63.40." The smallest item furnished is under date of October 6, 1924, "1 No. 16925 Intermediate Shaft Shim, $.10." In addition to the items of $98 and $63.40 above mentioned, there are 2 items between forty and fifty dollars, 1 item between thirty and forty dollars, 5 items between twenty and thirty dollars, 7 items between ten and twenty dollars. The remaining 32 items are all under $10, and of these 32 items only 15 exceed $1 in amount. Defendant Enke testified in part as follows regarding the performance of his contract on Federal Aid Project No. 164:

" * * * We used upon that work a certain 10-ton Holt Caterpillar tractor. While operating this tractor upon this work we had occasion to purchase repairs or parts for said tractor. These were purchased from the Western Materials Co., Sioux Falls, S. Dak. I presume that 'Exhibit A' attached to the complaint is a list of repairs or parts purchased for this tractor on this job. * * * We acquired it in 1922. We are in the road construction business, and were at that time. In that construction work we used this par-

ticular tractor that is inquired about and other tractors. We have been using them in that manner ever since we acquired them, and are still using them in road construction work, and are still using this particular Holt Caterpillar Tractor. * * * Before we took the contract which is involved in this case or did any of the work under this contract, we had other jobs under contract on which we used this Holt Caterpillar tractor before we moved over there. Since we completed that contract we have had other jobs under other contracts where we have been and are now using this same tractor. That tractor is a part of our permanent equipment as contractors. * * * The particular parts itemized in the bill attached to the complaint, were attached to and made a part of that tractor. I could not say whether they are still on that tractor. * * * I intended them to last as long as we could make them last and to use them on other jobs as well as the one we were on at the time we bought them. A number of these parts might have been on this tractor when we ceased using it on this job in question and commenced to use it on some other job. These items are for parts replaced, parts worn out or broken. * * * They were intended to last for some time. The intention was that they would last longer than this particular job we were working on. * * * These parts * * * were parts necessary to keep the tractor so that it would work while on this contract. * * * They were necessary repairs. * * * The work could not have been completed according to this contract without these repairs."

 This court has had occasion in several comparatively recent cases to consider the terms and provisions of these road construction contracts and contract bonds. In Anderson Lumber Co. v. National Surety Co., 49 S. D. 235, 207 N. W. 53, and in Dennis v. Enke, 55 S. D. 15, 224 N. W. 925, we pointed out the extremely broad scope of the surety's obligation thereunder. It is also to be noticed that the rule of strictissimi juris has no application in these cases, and the bond should be construed most strongly in favor of indemnity. Columbia County v. Consolidated Contract Co., 83 Or. 251, 163 P. 438; note, 23 Ann. Cas. (1912B) 1087. The covenant is "to pay all just claims for materials, supplies, tools, appliances and labor, and all other just claims incurred * * * in carrying out the provisions of the contract." As we have pointed out in previous decisions, the fundamental test is whether the claim in

question was such a just claim "incurred in carrying out the provisions of the contract" as might "be fairly held to have been in contemplation of the parties when executing the contract and the bond therefor." In Dennis v. Enke, supra, we held, and we think rightly, that the purchase price of a secondhand tractor becoming part of the contractor's general plant and equipment was not such a claim. On the other hand, it is the weight of authority under statutes or bond provisions comparable in liberality with those involved in this case that payments for rental or use of equipment hired by the contractor come within the provisions of the bond. See note, 44 A. L. R. 381; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206. As suggested in Dennis v. Enke, supra, there are undoubtedly "border line cases." Certainly the purchase price of substantial items of general plant and equipment are not within the bond, but, if the value of the use of equipment hired is a proper charge against the bond, and we think it is, we think it may equally well be said that expenditures for repairs to keep the equipment in operating condition are likewise within the bond, even though the purchase price of the particular equipment as such would not be.

In Minnesota under a staute (section 8245, Gen. St. 1913) providing as follows: " * * * The contractor shall give bond * * * for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under, or for the purpose of, such contract, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill and materials, for the completion of the contract in accordance with its terms, * * * " the Supreme Court said:

"It seems quite clear that the law, as it existed just prior to the taking effect of Rev. Laws 1905, did not give a cause of action on the contractor's bond for the purchase price of a tool or machine sold to the contractor to be used in a public work or improvement. But it was given for the repair of a tool or machine, and for the value of the use in case the contractor rents it for the job. Where the work is of such character that the use of extensive and costly machines are required, it is reasonable to consider that the wear and tear of these machines is a necessary contribution to the work, or in other words the reasonable value of the use of the machines contributes as much to the construction in hand as does

the reasonable value of the manual labor expended thereon. So, also, in the performance of every improvement or work of any magnitude, the tools become dulled and out of repair, and the machines used thereon break or wear out parts; and, in order to proceed efficiently with the work, these matters must be attended to, and require labor, skill, and material. In a work like this, if the cement mixer should break and the contractor had in his employ a workman capable of making the repair, and who so did, no doubt such workman could resort to the bond for his payment as readily as if he sought to recover for the value of his work in mixing the concrete that actually went into the work. And why should not an outsider, called in to do the same necessary repairing, stand in as good position? A proper interpretation of the statute, in the light of its history, its present wording, and a reasonable consideration of its purpose, is that for repair of the tools and machinery needed in public works, and for reasonable value or agreed price of the use of any tools or machinery furnished for and necessary in the construction, there is liability on the bond. But the statute as it originally stood did not warrant an interpretation that those who might sell the contractor appropriate tools and machines for use in the construction of a public work or improvement could look to the bond for the purchase price. Nor do we think the present statute was intended to serve that purpose. It would lead to unjust and absurd results. The instant case is an illustration. Here, the contractors were engaged, almost simultaneously, upon four separate road contracts, in each of which the pipes and wagons were appropriate tools and machines. Suppose there had been different bondsmen for each contract, it would certainly be unjust and unreasonable to hold the bondsmen on one contract liable for the whole purchase price of the tools or machines, even though the same had been less worn or depreciated on that contract than on any of the others. The purchase price of the tool or machine does not, in any proper manner, measure the seller's contribution to the work of the contract, but in so far as it is furnished to be used in the work and therein is broken, or depreciated, there can properly be said to be a contribution to the work under construction, thus affording a reasonable basis for legislation charging liability against the contractor's bond." Miller v. American Bonding Co., 133 Minn. 336, 158 N. W. 432, 433.

In Dennis v. Great Northern Construction Co., 54 S. D. 164, 222 N.W. 269, this court held the bond liable for the following repair items, namely: Three Timken bearings for tractor of the aggregate value of $71.18, and 39½ feet of 40-inch grader belt for elevator of the value of $148.25. In the instant case we are furnished with no specific information as to any particular item. We are not informed as to the usual life of any of the parts replaced. We are not informed as to any particular item as to whether its replacement was required because it was broken in use in the performance of the contract or because it was simply worn out. If it was worn out, we are not advised how much the use on the job in question contributed thereto. We are not advised from this record as to what or how much expenditure for repairs is usually necessary to keep a ten-ton caterpillar tractor in operating condition when used on road construction work. As to the great majority of the items in the bill, it would seem very clear that they are, in the words of the federal court, "repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only the ordinary wear and tear or the equivalent thereof." American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, 721. As to some of the largest items there might be more room for doubt. However, the evidence shows, and the trial court has found, that all these repair items were necessary to keep the tractor in operating condition, and were necessary for the completion of the contract.

We think a surety executing a bond as broad in its provisions as the one here involved must be held to have in contemplation a liability for such repairs to the plant and equipment of the contractor as are ordinarily and reasonably necessary to keep the same in operating condition to the end that the contract may be duly performed. Conceding, as we think we must, that there is some liability for repair, it is difficult to the point of impossibility to draw any hard and fast line. Repairs become necessary because of ordinary wear and tear or by reason of breakage which may be preceded by wear in varying degrees. Where a machine is employed in the performance of different contracts under varying conditions, it is impossible to compute exactly the amount of wear and tear in fact imposed on a machine in the performance of any particular piece of work. When the repair becomes necessary to

keep the machine in operation for the performance of the work, it must be made. When a machine is used for the performance of numerous successive jobs, it is doubtless true that each job will contribute something to subsequent jobs by way of repair of machinery which will there be of benefit, and it is doubtless equally true that each job after the first will receive some beneficial contribution by way of repairs from prior jobs. The matter is not, practically speaking, susceptible of mathematically precise allocation. We do not think we can say from the record in this case, as to any of the repair items involved, that it necessarily falls outside the limits of liability which were or should have been in contemplation when the bond was executed.

The judgment and order appealed from are affirmed.

POLLEY, BURCH, and BROWN, JJ., concur.

SHERWOOD, P. J., absent and not sitting.