Argued at Pendleton October 31; affirmed November 14, 1933;
rehearing denied January 2, 1934

# STATE, FOR USE AND BENEFIT OF STATER MOTOR CO., INC., *v.* METROPOLITAN CASUALTY INSURANCE CO. OF NEW YORK

(26 P. (2d) 1094)

*John Lichty,* of Portland, for appellant.

*Harold J. Warner,* of Pendleton (Raley, Raley & Warner, John F. Kilkenny, and Alfred F. Cunha, all of Pendleton, on the brief), for respondent.

BELT, J. This is an action on a contractor's bond upon which the defendant company is surety. In 1931, O. D. Wolfe entered into a contract with the state, through the state highway commission, to grade 6.41 miles of the west unit of the Umatilla-Sand Station section of the Columbia River highway. The plaintiff and its assignee furnished certain repair parts and labor for the trucks used on the job, aggregating $596. Upon default in payment, action was commenced. The cause was submitted to the court without a jury and judgment was rendered in favor of plaintiff. Defendant surety company appeals.

The trial court found that all of the materials and supplies furnished and the labor performed were essential to the construction of the highway and that such supplies and materials were of an incidental character and "did not survive the performance of the contract". The surety company introduced no evidence. It relies upon the proposition that the evidence as disclosed by the record fails to support the judgment.

The specific contention of the appellant is that repair parts and labor performed in repairing a contractor's equipment are not covered by a bond of this

character. It is urged, however, that if the court holds against this contention, the claim of the plaintiff should, nevertheless, be disallowed for the reason that the repairs in question were not minor nor incidental in character, but were of a permanent nature and added materially to the value of the contractor's equipment.

It is not practical to set forth the itemized statement of the charges for parts furnished and labor performed on these trucks. The following typical items are deemed sufficient for a consideration of the legal questions presented:

| | |
|---|---:|
| Install rear and overhaul rear end | $ 26.50 |
| Service car 4 trips, 45 mi. each way | 20.00 |
| 1 AS4609 pinion | 6.25 |
| 1 AA4630 bearing | .90 |
| 1 AA4035 gasket | .05 |
| 1 AA208400 hydraulic pump | 42.00 |
| Repair tire | .50 |
| Clean carburetor | .50 |
| 2/34/7 exp. ply casings and tubes | 121.90 |
| Repair 2 tubes—labor | 1.50 |
| To Umatilla and repair transmission and rear end | 17.50 |
| ½ gal. gas to wash parts | .11 |
| 4 AA2609 brake shoe | 10.00 |
| 1 AA8005 B radiator | 17.00 |
| 4 C plugs $3.00, 12 zerk fittings $1.20 | 3.20 |
| 12 piston rings $3.00, labor $6.15 | 9.15 |
| 2 batteries at $7.85 | 15.70 |

It appears from the evidence that the construction work was done under the most adverse physical conditions. As one witness testified:

"They (the trucks) received extremely hard use; they were used under a shovel and they were dropping heavy loads on them * * * the roads were extremely hard and sandy. * * *

"It was in sand and over the worst possible conditions in which the trucks could work; there was no road for the truck to work over and the sand was blowing almost constantly."

At the commencement of the job in June, the contractor had four new Ford trucks each costing $1,100. When the work was completed in September, these trucks, according to the undisputed testimony, were worth not to exceed $160 each. The other two G. M. C. trucks used in the work had a 75 per cent depreciation in value during the same period of time.

In describing the condition of the trucks upon the completion of the work, one of the mechanics employed by the Stater Motor Company, who had worked upon the trucks, testified:

"The axles were broken, the axles were all bent, the radiators were all leaking and full of holes and some of the hoods were completely torn off of them, and there were no windshields on them; the tops were gone, the beds were all wrecked from the steam shovel dropping the shovel in the bottom of them and some of the transmissions were usable and some were not; some of them had the rear ends out; the tires, the rubber was off of two-thirds of them; the hydraulic hoist broke down in some way, they were not able to do their work, and the batteries, I think all the batteries in them were shot; the motors were all completely shot, ground all out.  *  *  *

"The bearings were cut out in those gears and the gears shot in backing up that sand."

In speaking of the hydraulic pumps, the witness testified:

"They were ground out beyond use, they would not raise the load any more, that is the load they were supposed to carry, due to the fact they had been overloaded and overworked; they had cut them all out."

In response to the question, "Did they have any further value for future use?" the witness answered, "No, sir; it would cost more to repair them than to replace them."

■ The statutory bond upon which the liability of the surety is predicated is conditioned that the "contractor shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contract". Having in mind the object and purpose of the legislature in requiring this statutory bond, viz., the protection of laborers and materialmen who deal with public contractors and that the bond is to be liberally construed in favor of the beneficiaries (*State for the Use of Jones v. Feak et al.,* 141 Or. 481 (18 P. (2d) 203) ; *State for Use of Pegan et al. v. American Surety Co.,* 137 Or. 394 (300 P. 511, 2 P. (2d) 1116) ; *State ex rel. Hagquist v. United States Fidelity & Guaranty Co. et al.,* 125 Or. 13 (265 P. 775)), we come to the question as to whether the labor and materials in controversy are covered by the bond.

The authorities are in conflict relative to this question. See cases in notes 67 A. L. R. 1232; L. R. A. 1915F, 951; 43 L. R. A. (N. S.) 162. A few of the courts seem to consider paid sureties favorites of the law, as evidenced by the holding that gasoline and oil furnished to the contractor and consumed on the job do not come within the bond. One court holds that hay fed to the horses used in construction work is covered while another court with equal solemnity holds that food furnished and fed to the men is not. In view of the great contrariety of opinion, it may well be concluded that the law is not an exact science. No attempt will be made to review the authorities from other ju-

risdictions. It is a sufficient task to reconcile all that this court has said on the subject.

In this jurisdiction the rule of strictissimi juris, by which the undertaking of a surety was strictly construed and all doubts resolved in his favor, is not applicable to surety companies engaged in such business for compensation: *Columbia County v. Consolidated Contract Co.*, 83 Or. 251 (163 P. 438). Neither is it essential to recovery, as in mechanic lien cases, that the materials furnished become a component part of the construction. Such statutory bonds are entitled to a more liberal construction than statutory liens: *Multnomah County v. United States Fidelity & Guaranty Co.*, 87 Or. 198 (170 P. 525, L. R. A. 1918C, 685). Liability is established if the materials furnished or the labor performed is necessary for the prosecution of the work.

In keeping with the universal rule, it has been held by this court that the purchase price of a contractor's equipment does not come within the bond: *Fitzgerald v. Neal*, 113 Or. 103 (231 P. 645). However, a claim for rental value of equipment, while it is actually used on a job, has been allowed as being within contemplation of the statute: *Multnomah County v. United States Fidelity & Guaranty Co.*, supra. In *State for the Use of Jones v. Feak, et al.*, supra, an action against a surety was upheld based upon a claim against a contractor for unloading, dismantling, and hauling a steam shovel 90 miles to place of work. Mr. Justice BEAN, speaking for the court, said:

"Under such bond and statute this court has held that one furnishing rental of equipment, meats and groceries to feed contractors' laborers, feed for horses, for mules used in the work, *incidental repairs to equipment,* gas, oil and lubricating outfits and drawing of

plans, for the prosecution of the work provided in a public contract, was protected by the bond: * * *.''

In *Columbia County v. Consolidated Contract Co.*, supra, this court said:

"Material, supplies and labor furnished for incidental repairs on machinery used in the work, and a blacksmith's services, are covered by both the statute and bond: * * *.''

It is argued that the later case of *Fitzgerald v. Neal*, supra, is against the allowance of incidental repairs. True, there is language in such opinion which supports appellant's contention in this respect, but it must be borne in mind that incidental repairs were not involved in the Fitzgerald case. The claim of plaintiff therein was disallowed and the judgment reversed for the reason that the repairs in question were permanent in nature and "were not consumed in the construction of the highway''. The language of the court in *Columbia County v. Consolidated Contract Co.*, supra, relative to repairs, was not dictum, as an examination of the record therein discloses a claim urged for incidental repairs. We may assume, therefore, that this court is committed to the rule that incidental repairs come within the protection of the bond. Furthermore, it may be assumed in the light of the Fitzgerald case that permanent repairs not substantially consumed in the construction work are not covered by the bond. However, in speaking of permanent repairs, it is to be understood that the term refers to repairs of such a character that they will survive the work and will inure to the benefit of the contractor on other jobs.

■■ It is not our purpose to so construe these statutory bonds that liability will be imposed upon a surety

for repairs that add materially to the value of the contractor's equipment and may be used by him on other contracts. Nor do we think it within the contemplation of the statute or the parties to the contract that the surety should be relieved of liability for such repairs to the plant and equipment of the contractor as are reasonably necessary to keep the same in operating condition, to the end that the contract may be performed. The reason for the distinction between minor and major repairs fails when the repairs made do not survive the job. We are not unmindful that even a minor repair, such as a new spark plug, might last long enough to be used to some extent on some other job. No hard and fast rule can be laid down whereby the surety's liability arising out of repairs to equipment can be determined with mathematical certainty. The rule thus announced promotes substantial justice. It is suggested that, if this reasoning be sound, a materialman could recover the purchase price for machinery wholly consumed in the work. We think that such result does not necessarily follow, since the liability of the surety for the purchase price is clearly not within the contemplation of the statute affording protection to those who furnish "labor and material" for the prosecution of the work.

█ Appellant surety company invokes the rule as announced in *Standard Boiler Works v. Nat'l Surety Co.*, 71 Wash. 28 (127 P. 573, 43 L. R. A. (N. S.) 162), to the effect that if the material furnished to the contractor is such that, from its nature, it will if used upon the job, be entirely consumed therein, then it is a proper charge against the bond. We think such rule places an undue burden or risk upon the merchant or materialman who, in good faith, furnishes repair parts to a contractor to the end that he may perform his contract. It is

often difficult to determine, by inspection, the probable life of an article or of material without taking into consideration the use to which it is put on a particular job. In our opinion, if, in fact, the material was consumed or used up in the construction work, it is only just and fair that protection be afforded to those who supply such material. It is easy to conceive that one part used in repair and placed upon a piece of machinery shortly before the conclusion of the work might well be viewed as permanent; whereas the same article placed upon a piece of machinery earlier in the same job, and subjected to the trying conditions of labor which characterizes the work in the instant case, might, as an incident thereto, be soon consumed. Each case must be considered upon its own particular facts.

Under the undisputed facts in this case, all the labor performed and the materials furnished were reasonably necessary for the prosecution of the work and were substantially consumed in the prosecution thereof. Since there is evidence tending to support the findings of the court relative to such issues, it follows, in view of the principles of law herein announced, that the judgment of the lower court is affirmed.

CAMPBELL and BAILEY, JJ., did not sit in this case.

RAND, C. J., dissents.