BECKWITH MACHINERY
COMPANY, Appellee,

v.

ASSET RECOVERY GROUP, INC. and
National Union Fire Insurance
Company of Pittsburgh.

Appeal of: National Union Fire
Insurance Company Of
Pittsburgh, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 20, 2005.
Filed Dec. 27, 2005.

Stephen J. Laidhold, Pittsburgh, for appellant.

Timothy J. Cornetti, Pittsburgh, for appellee.

Before: ORIE MELVIN, McCAFFERY and POPOVICH, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, National Union Fire Insurance Co. (National Union), appeals from the judgment[1] entered in favor of Appellee Beckwith Machinery Company (Beckwith) in this dispute over the scope of a payment and performance bond. Following careful review, we affirm in part and reverse in part.

¶ 2 This matter arises from the demolition of the University of Pittsburgh's football stadium in 1999 so that a new convocation center could be built. On November 29, 1999, the Department of General Services (DGS) executed a contract with Dore & Associates Contracting, Inc. (Dore), for Dore to perform all of the work and supply all necessary materials to complete the project in a timely manner. In accordance with applicable statutory re-

---

1. Although National Union purports to appeal from the order denying its post-trial motion, we note that the appeal properly lies from the judgment entered following disposition of such motion. *Hart v. Arnold,* 884 A.2d 316, 325 n. 2 (Pa.Super.2005). We have corrected the caption accordingly.

quirements, Dore was required to post a bond, and it therefore executed a contract bond for payment on and performance of the project with National Union as surety.[2]

¶ 3 Dore thereafter entered into a subcontract agreement with Asset Recovery Group, Inc. (ARGI), wherein ARGI agreed to perform the work on the project for completion by April 1, 2000. ARGI in turn entered into a subcontract agreement with Beckwith and others to perform specific aspects of the project. Beckwith agreed to provide service and repairs to the heavy construction equipment to be used on the project by ARGI or its subcontractors and did such work beginning in December 1999. However, in mid-April 2000, Dore terminated ARGI's subcontract essentially because the project was still incomplete.

¶ 4 On April 19, 2000, Beckwith made a written claim with National Union under the terms of Dore's payment and performance bond for work which Beckwith had already performed on the project but for which it was not paid. After National Union denied its claim, Beckwith commenced this action which ultimately focused on 15 specific invoices by Beckwith totaling approximately $52,000 which National Union disputed. Each of those 15 invoices related to the installation and/or replacement of an engine and various engine components for the heavy construction equipment used at the project site.[3]

¶ 5 The trial court concluded that pursuant to the terms of the bond, National Union was obligated to pay Beckwith the full amount of the challenged invoices despite the characterization of the work performed and entered an award consistent with that determination.[4] This appeal followed denial of National Union's post-trial motions.

¶ 6 On appeal, National Union asserts that its obligation as surety did not extend to capital improvement repairs made by Beckwith in connection with the project. Both parties cite to cases in Pennsylvania and other jurisdictions in support of their respective positions, while acknowledging a lack of precedent addressing the precise issue presented.

¶ 7 At the outset, we note our scope and standard of review of a decision in a non-jury civil trial such as this, which is

limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be

---

2. Generally speaking, a payment bond protects subcontractors, suppliers, and those who provide labor to a principal under a construction contract, by providing assurance that a surety will make payment for the work performed if the principal fails to do so. *See* Toomey, Daniel E. and Tamara McNulty, "Surety Bonds: A Basic User's Guide for Payment Bond Claimants and Obligees," 22 Construction Lawyer 5 (Winter 2002) (© American Bar Association 2002).

3. National Union has conceded that general maintenance repairs were covered by the bond.

4. Judgment was also entered against ARGI, which did not participate in this action at trial and is not a party to this appeal.

taken as true and all unfavorable inferences rejected.

*Anderson v. The Litke Family Limited Partnership*, 748 A.2d 737, 738–39 (Pa.Super.2000). "As with all questions of law, our review is plenary." *Walsh v. Borczon*, 881 A.2d 1, 6 (Pa.Super.2005) (citations omitted).

■ ¶ 8 We begin with a review of the language of the contract bond, which names Dore as the Principal and National Union as the Surety. "As a surety agreement is a contract, we turn to its language to determine the extent of the surety's rights and liabilities." *Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 538 (Pa.Super.1998). The relevant sections of the performance and payment bond at issue provide as follows:

> B. That, if the above Principal shall and will promptly pay or cause to be paid all sums of money which may be due by the Principal or any of its Subcontractors to any person, co-partnership, association or corporation for all material furnished and labor supplied or performed in the prosecution of the Work, whether or not the said material or labor entered into and become component parts of the Work or improvements contemplated, and for rental of equipment used, and services rendered by public utilities in, or in connection with, the prosecution of such Work, then this part of this obligation shall be void,

otherwise, it shall be and remain in full force and effect.

> \* \* \* \* \* \*

> D. The Principal and Surety hereby jointly and severally agree with the Obligee herein that every person, co-partnership, association or corporation which, whether as subcontractor or as a person otherwise entitled to the benefits of this Bond, has furnished material or supplied or performed labor or rented equipment used in the prosecution of the Work as above provided ... may sue in assumpsit on this bond....

Exhibit B to Complaint, C.R. at 4 (emphasis added).[5] The critical question is whether Beckwith furnished material and labor "in the prosecution of the Work," as contemplated by the bond. Although Beckwith argues, and the trial court concluded, that the plain and broad language of the bond provides "all inclusive" protection for any and all labor and materials provided, we cannot interpret these terms so expansively. As our Supreme Court explained in *Philadelphia ex rel. American Bridge Co. v. Jackson & Co., Inc.*, 280 Pa. 319, 324–25, 124 A. 446, 447 (1924), the liability of a surety for provision of materials depends upon the "character of the materials and the purpose for which they were furnished."

¶ 9 National Union's argument is that "each of the disputed invoices involved capital improvements that had served to make the various pieces of equipment

---

**5.** There is no contention that this language is inconsistent with the mandates of the Public Works Contracts Bond Law, 8 P.S. §§ 191 *et seq.*, which requires that a bond be furnished by a contractor in public works projects. The Law protects claimants who furnish labor or materials on such a project "whether or not the material furnished or labor performed enters into and becomes a component part of the public building or other public work or public improvement[.]" 8 P.S. § 195.

Where Commonwealth agencies are involved, the Commonwealth Procurement Code, 62 Pa.C.S.A. §§ 101 *et seq.*, similarly requires a payment bond for protection of claimants who supply labor or materials in the prosecution of the work, "whether or not the labor or materials constitute a component part of the construction." 62 Pa.C.S.A. § 903(b). *See* Section 6(b) of Act 57 of 1998 (repealing the Public Contractors' Bond Law of 1967 insofar as it applied to Commonwealth agencies).

more valuable than when they had been delivered to the jobsite" and thus fell outside the scope of coverage of the bond. Appellant's brief at 11. We begin with a review of Pennsylvania case law which National Union cites in support of its position.

¶ 10 The first is *Philadelphia School District ex rel. Crowe v. B.A. Shrages Co., Inc.*, 134 Pa.Super. 533, 4 A.2d 558 (1939), *aff'd per curiam*, 336 Pa. 433, 9 A.2d 900 (1939), where Shrages Co. was awarded three contracts for painting various school buildings, and Amsterdam Casualty Co. was the surety. Bonds were furnished pursuant to the applicable section of the School Code providing for payment for "all material furnished and labor supplied or performed in the prosecution of the work whether or not the said material or labor enter into and become component parts of the work or improvement contemplated." 4 A.2d at 559 (quoting the Act of May 29, 1931, P.L. 243 at 255–56). Conditions set forth in each of the bonds contained nearly identical language.

¶ 11 Shrages Co. purchased certain equipment for the project, including scaffolding and ladders, from Moulton Ladder Co. but did not tender payment in full to Moulton. Consequently, Moulton sought to recover against both Shrages Co. and Amsterdam as surety on its bonds. The trial court determined that Amsterdam was entitled to judgment as a matter of law. On appeal, we addressed the question of whether the specific equipment sold by Moulton to Shrages Co. was "material furnished in the prosecution of the work." 4 A.2d at 561. We reviewed several earlier cases which similarly decided whether material was furnished or supplied for the prosecution of the work, and explained that

there is a clear distinction between such material [e.g., lumber, gasoline, and oil] and the purchase of equipment, apparatus and appliances which were not intended to go into or become a part of the improvement, or to be consumed or used upon the prosecution of the work, but which were intended as aids or appliances which the contractor would naturally be expected to furnish, and which he would take away with him on the completion of the work, to be used by him in like manner on subsequent contracts.

4 A.2d at 562 (emphasis omitted). We concluded that the equipment in question was not designed to enter into the work, or be consumed in its execution, but rather would be taken away, intact, by the contractor upon completion. We therefore affirmed the trial court's entry of judgment.

¶ 12 Many years later in *Commonwealth ex rel. Walters Tire Service, Inc. v. National Union Fire Insurance Co.*, 434 Pa. 235, 252 A.2d 593 (1969), our Supreme Court reviewed a claim under payment bonds provided for highway construction projects. Walters Tire Service had supplied tires for heavy earth-moving equipment but was not paid by the contractor. The bond language was quite similar to that in *Shrages:* "materials furnished ... in the prosecution and completion of the work to be done ... whether or not said materials ... entered into and became component parts of the work or improvement contemplated." 434 Pa. at 237–38, 252 A.2d at 594. Our Supreme Court quoted from our decision in *Shrages* and found its reasoning to be sound, as well as consistent with federal decisions interpreting the Miller Act.[6] The Court concluded

---

**6.** Formerly 40 U.S.C. §§ 270a *et seq.* (*see now* 40 U.S.C. §§ 3131 *et seq.*) This Act requires bonds in public works contracts to provide protection to all persons supplying labor and material in the prosecution of the work provided for in the contract. *See, e.g., United*

that "tires and related products consumed in the course of completing the project are included within the terms of the surety bond." *Id.* at 240, 252 A.2d at 595.

¶ 13 Next, in *Tioga County Commissioners ex rel. L.B. Smith, Inc., v. C. Davis, Inc.*, 439 Pa. 285, 266 A.2d 749 (1970), a similar issue was presented to the Supreme Court. There, C. Davis, Inc. agreed to perform excavation work for which it leased heavy equipment. L.B. Smith, Inc. sought to recover under a bond for costs it incurred in repairing the undercarriage of a tractor used on the project. Our Supreme Court first observed that the County Code required the bond to include coverage for persons who supplied labor or material "whether or not the said material or labor enter into and become component parts of the work or improvement contemplated." *Id.* at 288, 266 A.2d at 750. The Court once again quoted from this Court's decision in *Shrages, supra,* and stated, "[w]e simply do not believe that permanent repairs on a multi-use piece of contracting equipment fall within the coverage of the bond." *Id.* at 290, 266 A.2d 749, 266 A.2d at 751.

¶ 14 National Union also cites to several cases from other jurisdictions including *Western Casualty and Surety Co. v. Fulton Supply Co.*, 60 Ga.App. 710, 4 S.E.2d 690 (1939), *State ex rel. Stater Motor Co. v. Metropolitan Casualty Ins. Co.*, 145 Or. 367, 26 P.2d 1094 (1933), and *McGee Steel Co. v. State of Alaska*, 723 P.2d 611 (Alaska 1986). In *Western Casualty*, the Court considered whether materials furnished for repair of machinery used on a highway construction project were protected by a surety bond. The Court explained that

there could be no recovery "for major repairs [to machinery] involving the replacement of old with new parts, in the absence of proof that the new parts were consumed in the work covered by the bond." 4 S.E.2d at 691. "The determinative distinction is between the items going into the work, or specially contributing to the execution of the contract and nothing else, and those properly chargeable to the plant and equipment of the contractor, and available not only for the pending work but for other work as well." *Id.* Similarly, the Court in *Stater Motors* opined that permanent repairs to equipment which would "survive the work and [ ] inure to the benefit of the contractor on other jobs" was not covered by the bond. 26 P.2d at 1096.

¶ 15 In *McGee*, a steel company leased a crane from McDonald Industries for a construction project, but the boom on the crane failed within just a few days. Among other things, the Court reviewed whether the surety was liable for repair costs and determined that "incidental damages and ordinary wear and tear" were within the coverage of the bond, explaining that the critical inquiry was "the degree of expected consumption of the items on the particular job for which they were furnished." 723 P.2d at 618 (citation omitted).

¶ 16 On the other hand, Beckwith relies principally on three cases outside of Pennsylvania, all of which were decided prior to 1938. The most recent is *Massachusetts Bonding & Ins. Co. v. United States ex rel. Clarksdale Machinery Co.*, 88 F.2d 388 (5th Cir.1937), where contractors were

---

States ex rel. Westinghouse Electric Supply Co. v. National Surety Corp., 179 F.Supp. 598, 601 (E.D.Pa.1959). It also sets forth notice and filing requirements for claims made pursuant to those bonds. *Id.* Pennsylvania's version of the statute is the Public Works Contractors'

Bond Law of 1967, *see* n. 4, *supra*. It has been held that capital improvements are not labor or material under the Miller Act. *United States ex rel. Sunbelt Pipe Corp. v. U.S. Fidelity and Guaranty Co.*, 785 F.2d 468, 470 (4th Cir.1986).

building a levee near the Mississippi River and required use of a fleet of small trucks. Due to time and weather constraints, "the trucks were run day and night seven days a week, habitually overloaded and at high speed, in dust clouds that not only ground out the machinery but caused collisions on an average of one a day." *Id.* at 388. Extensive and frequent repairs to the trucks were necessary over the course of the project and by its end, the trucks were worth very little. The Court considered the extraordinary character of the work performed on the project and concluded that the repairs were "consumable material furnished in the prosecution of the work" rather than replacements to capital equipment.

¶ 17 In *Maryland Casualty Co. v. Ohio River Gravel Co.*, 20 F.2d 514 (4th Cir. 1927), the Court acknowledged the general principle that "repairs which add materially to the value of the equipment" do not fall within the protection of a bond but distinguished incidental repairs which were necessary to keep trucks in running condition so the work could be performed. Similarly, in *Western Material Co. v. Enke*, 56 S.D. 302, 228 N.W. 385 (1929), the Court considered whether repairs to a tractor were protected by a bond, and concluded that "expenditures for repairs to keep the equipment in operating condition" were included by the broad language of the bond in question. *Id.* at 387. The specific language of the bond was quoted in the South Dakota Supreme Court's prior decision in *Enke v. Federal Surety Co.*, 55 S.D. 15, 224 N.W. 925, 926 (1929), requiring payment for "all claims incurred for materials, supplies, tools and appliances, in carrying out the provisions of the contract."

¶ 18 We find that the cases on which Beckwith relies are factually inapposite to the case *sub judice*. Based on our review

of the weight of authority in Pennsylvania and other jurisdictions, we adhere to the generally accepted view that capital improvements and permanent repairs to equipment which will survive the project are not covered by the surety bond issued by National Union. Accordingly, we find the trial court erred in construing the language of the bond to include all of the invoices submitted by Beckwith, irrespective of the nature of the work described in those invoices.

¶ 19 We next turn to the question of whether any or all of the 15 disputed invoices constituted capital improvements such that they fall outside the scope of National Union's bond. At the hearing held before the trial court, Beckwith presented as a witness one of its former employees, Mr. Robert Tepke, who at best provided equivocal testimony as to the nature of the repairs in question and the amount of time one would expect them to last. N.T. Hearing, 9/13/04, at 50–68. By contrast, National Union presented the testimony of Mr. Arthur Dore, president of Dore, who stated that each and every one of the invoices at issue involved major repairs which would be expected to last well beyond the short duration of the project (137 days), and most should endure for a minimum of several years. *Id.* at 102–13, 224 N.W. 925. Mr. Dore described in detail the repairs made to the excavation equipment for which National Union disputed coverage. Specifically, those repairs entailed replacement of major component parts of the heavy equipment and, in one instance, consisted of the installation of a completely rebuilt engine on a Caterpillar excavator. *Id.*

¶ 20 Based on our review of the evidence presented, we conclude that the 15 disputed invoices all involve major repairs in the nature of capital improvements to the heavy construction equipment which a con-

**410**

tractor would be expected to "take away with him on the completion of the work, to be used by him in like manner on subsequent contracts." *Shrages Co., supra,* 4 A.2d at 562. These repairs simply may be not classified as ordinary maintenance performed for consumption over the course of the project; rather, this work is not unlike the repairs to a tractor undercarriage which our Supreme Court determined was not covered by the bond in *Tioga County Commissioners, supra,* which contained very similar language to the bond in the case *sub judice.* Accordingly, we find that the scope of these 15 disputed repairs on a project 137 days in duration do not fall within the coverage of National Union's bond.

¶ 21 In summary, we find the trial court erred in determining that Beckwith was entitled to recovery based on the plain language of the bond. Additionally, we conclude that the evidence established the 15 disputed invoices totaling approximately $52,000 constituted capital improvements which are not covered by the bond in question. Consequently, the trial court's award in favor of Beckwith on the 15 disputed invoices must be reversed.[7]

¶ 22 Judgment affirmed in part and reversed in part, and case remanded for entry of judgment consistent with this Memorandum. Jurisdiction relinquished.

---

**7.** National Union does not challenge the portion of the judgment which relates to other invoices; consequently, this portion of the judgment must be affirmed. *See* Appellant's brief at 42.